Voorhees *v.* The Indianapolis Car and Manufacturing Company *et al.*

Filed Jan. 11, 1895.

---

No. 16,498.

## Voorhees *v.* The Indianapolis Car and Manufacturing Company et al.

Appeal.—*Final Judgment Defined.*—*Refusal to Make Petitioner a Party to a Suit.*—A final judgment or order from which an appeal can be taken, within the meaning of the civil code, is such a judgment or order as makes a final disposition of the case. A refusal to allow a person petitioning to be made a party to a pending suit is a final judgment from which an appeal lies.

Same.—*Marion Superior Court.*—*Questions for General Term.*—*New Issues.*—The general term of the Marion Superior Court can pass upon only those matters which were determined at the special term, and no new issue of either law or fact can be presented at the general term that was not passed upon at the special term.

Receiver.—*Represents Both Creditors and Stockholders.*—*Trustee.*—*Title.*—*Rights of Receiver.*—A receiver of a corporation represents both the creditors of the corporation and the stockholders, and is regarded as a trustee for such creditors and shareholders, but for the purpose of determining the nature and extent of his title, he represents only the corporate existence itself, and not its creditors or shareholders, being vested by law with the estate of the corporation and deriving his own title under and through it. For the purposes of litigation, he takes only the rights of the corporation, such as could be asserted in its own name, and upon that basis only can he litigate for the benefit of either shareholders or creditors, except where acts have been done in fraud of the rights of such creditors, but which are valid as against the corporation itself, in which instance he holds adversely to the corporation.

Same.—*Usurping Power of Receiver.*—*Removal.*—A creditor of a corporation for which a receiver has been appointed can not usurp the powers of such receiver by petitioning the court to take such steps as will amount to the appointing of another receiver. The proper

Voorhees *v.* The Indianapolis Car and Manufacturing Company *et al.*

course is to ask that the receiver already appointed be removed and another person appointed in his place.

Same.—*Creditor May Ask for Instructions for Receiver.—Appeal.*—Any creditor, after establishing his claim by an intervening petition in the suit in which the receiver was appointed, acquires a sufficient standing in court to ask for orders and directions on the receiver in furtherance of the creditor's interest, and if such receiver disobey such instructions, the creditor may ask for his removal by the court appointing him, and if the court refuse to take such action as will secure and protect all concerned, an appeal may be taken from such refusal.

From the Marion Superior Court.

*F. Winter, A. C. Harris* and *J. B. Elam,* for appellant.

*N. Morris, L. Newberger, J. B. Curtis, J. S. Duncan, C. W. Smith* and *W. A. Ketcham,* for appellees.

McCabe, C. J.—The Indianapolis Car and Manufacturing Company, hereinafter called the car company, was for many years engaged in the manufacture of railroad cars in West Indianapolis. On October 10, 1890, the appellant, Voorhees, brought an action against the car company on a note, alleging the insolvency of the car company, a corporation, and prayed, *inter alia,* for the appointment of a receiver. The case was assigned to room one in said superior court.

Thereupon the court appointed Mr. Henning as receiver, and directed him to carry on, manage and operate the business and plant of said defendant. Under this order he maintained the car company as a going concern.

Nearly four months after the appointment of the receiver, to wit, on January 31, 1891, the New Albany Forge and Rolling Mill, another corporation and general creditor, appeared in said court and cause for the first time and presented a petition asking to be made a party plaintiff in the case of *Voorhees* v. *Car Company,*

to the end that it might take control of the administration of the receivership in behalf of itself and all the general creditors, supervise the administration of the receiver, review some of his acts and the acts of the court in carrying on the business before the date of filing such petition, and bring divers suits against persons having transactions with the car company and the receiver, and for unpaid stock, statutory penalties, etc. Accompanying the petition was an omnibus complaint which was offered to be filed.

The court, in special term, denied the petition. On appeal to the general term, this action was reversed, from which judgment of reversal this appeal is prosecuted.

In the general term, the appellees in that court moved the court to dismiss and reject the appeal thereto, "for the reason that the court has no jurisdiction to receive and try the petition, because the said petitioner never became a party to said cause, and because the order of refusal is not such an interlocutory matter as may be appealed from, nor is it a final judgment," which motion the general term overruled.

The same appellees filed in said general term a motion showing to the court that prior to the filing of the petition aforesaid by the rolling mill, the City Savings Bank of Chattanooga, Tenn., and others, had formed an association for the purpose of acting conjointly in the matter of their claims, and employed counsel, who filed the petition in special term in pursuance thereof; that the petion was denied in special term, on May 27, 1891; that afterwards, on July 14, 1891, the same savings bank, by the same counsel, and in pursuance of the same arrangement, purpose, association and combination, began an action for itself and all other general creditors, in the circuit court of the United States for the district of In-

diana, against the same parties, for substantially the same purpose as set forth in the petition and complaint tendered therewith; in which action all the citizens of Indiana, parties defendant to said bill, were duly served, and the said action is still pending in the United States Circuit Court aforesaid. Wherefore the appellees say that this honorable court should no further proceed in the hearing of this appeal.

The general term thereupon "announced that it would hear the argument, including the argument on the motion to dismiss the appeal, and if it became necessary, in the judgment of the court, to hear the facts in support of the truth of said motion, the court would so announce after argument and before decision."

The general term in reversing the decision of the special term delivered an opinion in writing by Harper J., in which Walker, J., concurred. Taylor, J., who had presided and denied the partition in special term, taking no part in the cause in general term; the opinion is a part of the record here, and states that "the * * court had concluded to make no ruling on the matter set forth in said motion, and refused to make any ruling thereon, saying it left the matter to the Supreme Court in case an appeal was taken, to be disposed of there as that * court might deem best.

The errors assigned here are:

1st. That the superior court in general term erred in overruling the motion to dismiss the appeal to the general term.

2d. In overruling the application and motion of appellant to be permitted to introduce in support of their plea in the nature of a plea *puis darrein continuance*, and in declining to hear evidence in support of said plea, and refusing to rule upon said plea.

3d. In reversing the order and judgment of the court in special term.

In support of the first specification, it is contended that the order appealed from was neither a final judgment nor such an interlocutory order as that an appeal is authorized therefrom. The only interlocutory orders from which an appeal is authorized by the statute generally are:

1st. For the payment of money, to compel the execution of any instrument of writing, or the delivery or assignment of any securities, evidences of debt, documents or things in action.

2d. For the delivery of the possession of real property or the sale thereof.

3d. Granting or dissolving, or overruling motions to dissolve an injunction in term, and granting an injunction in vacation.

4th. Orders and judgments upon writs of *habeas corpus* made in term or vacation. 1 Burns R. S. 1894, section 658, R. S. 1881, section 646.

The order in question was not an interlocutory one within the meaning of these provisions, and if it was an interlocutory order at all, we know of no other provision of law authorizing an appeal from it. An interlocutory order appointing or refusing to appoint a receiver may be appealed from within ten days thereafter. 1 Burns R. S. 1894, section 1245, R. S. 1881, section 1231. But this is not such an order. In all other cases, an appeal lies generally only from a final judgment. 1 Burns R. S. 1894, section 644, R. S. 1881, section 632. A final judgment within the meaning of this section is defined to be such a judgment or order as makes a final disposition of the case. *Covey, Admr.*, v. *Neff*, 63 Ind. 391; *Hill* v. *Shannon*, 68 Ind. 470; *Matter* v. *Campbell*, 71

Ind. 512; *Reese* v. *Beck*, 9 Ind. 238; *Davis* v. *Davis*, 36 Ind. 160; *Northcutt* v. *Buckles*, 60 Ind. 577; *Taylor* v. *Board, etc.*, 120 Ind. 121; *Champ* v. *Kendrick*, 130 Ind. 545; *Thomas, Admr.*, v. *Chicago, etc., R. W. Co.*, 139 Ind. 462, and authorities cited; Elliott App. Proced., sections 83, 84, 85, and authorities cited.

It is objected to the right of appeal from the order denying the petition, that such petitioner, the rolling mill, was not a party to the action of Voorhees and the appointment of the receiver, because the court had refused to make it such in the denial of the petition, and hence being a stranger to the record, it could not appeal. But this contention is based on a misconception of what it is that the rolling mill was appealing from. The record clearly shows that it was not appealing or trying to appeal from Voorhees' judgment against the car company; if it had so appealed or tried so to appeal, its effort should have been properly met by a dismissal of such appeal or attempted appeal. It also clearly appears that the rolling mill was not appealing or attempting to appeal from the order appointing the receiver. Such an appeal would have been equally unavailing. But the rolling mill was appealing from the action of the special term on its petition asking to be allowed to intervene in the proceedings resulting in the appointment of the receiver for the alleged purpose of better protecting the interests of itself, a creditor of the car company, together with all other general creditors of the insolvent car company. It can hardly be said that the car company was not a party to its own petition of intervention, or that it was not a party to the order of the special term denying its petition. It was a party to the petition and order thereon, within the meaning of the law requiring as a prerequisite to the right of appeal that the party invoking

such right must be a party to the order or judgment appealed from.

The order or judgment appealed from was one that made a final disposition of the case made by the petition. It disposed of all the rights therein sought to be asserted and enforced not temporarily but for all time to come. It made an end of those rights. That brings the case within the authorities as to what is such a final judgment as that an appeal may be had therefrom. In section 85 of Elliott App. Proced., *supra*, it is said: "Cases of the class represented by the particular instances proceed, as a rigid analysis will disclose, although this is not always avowed, upon the theory that the order or judgment puts an end to the whole controversy involved in the particular instance, although it does not adjudicate upon the entire subject in such a manner as to terminate all litigation that can arise concerning or affecting the general subject." It is contended for the appellant here that as the court denied the petition to be made a party, there can be no appeal; but if the court had granted the petition, then the petitioner could have appealed. But counsel fail to tell us what such a petitioner would appeal from. Certainly he could not appeal from the order granting the prayer of his petition, awarding him all the relief he had asked for. The logic of the learned counsel amounts to this: If the court decides against you you can not appeal from such decision, if it decides in your favor and grants you the very thing and all you ask for, you can appeal. This is only an indirect method of asserting that there is no appeal from a judicial determination of a matter by a trial court to an appellate tribunal, involving it may be an absolute denial of the most vital and valuable rights of a party. Such determination makes a final disposition of such rights, and as to those rights is a final adjudication.

It was held by this court in *Clough* v. *Thomas*, 53 Ind. 24, under section 273, 1 Burns R. S. 1894 (R. S. 1881, section 272), providing for the making of new parties, that a judgment might be and was there reversed for the sole reason that the trial court had denied the petition or application of one not a party to be made a party to the action. See also *Scobey* v. *Finton*, 39 Ind. 275; *Pickrell* v. *Jerauld*, 1 Ind. App. 10.

An author of high standing lays down the rule thus: "When a court of equity has taken jurisdiction of an estate by its receiver, as in the case of an insolvent corporation, upon proceedings in the nature of a judgment creditor's bill, creditors asserting liens or claims upon the property as found in the receiver's possession may file their petitions of intervention in the suit in which the receiver was appointed. Such petitions are substantially independent suits, and may proceed to final judgment, allowing or rejecting the demand or claim asserted, independent of the judgment in the principal cause. Every such intervention is regarded as, in effect, a suit against the receiver, and any party to the cause who may be dissatisfied with the final order made upon such petition may appeal therefrom." High Rec., section 254*c*.

We are, therefore, of opinion that the general term did not err in overruling the motion to dismiss the appeal thereto.

The second specification is that the general term erred in overruling the application for leave to introduce evidence in support of the plea therein filed of *puis darrein continuance*. The general term is a court for the correction of errors of law occurring in the special term, and not a court for the trial of questions of fact, all of which must be determined in a court of original jurisdiction. The supposed plea was filed and presented for the first time after the appeal had been perfected and docketed in

the appellate tribunal, and it presented a question of fact, if it was sufficient in law, that had never been presented to the trial court, the court of original jurisdiction. Whether it was not sufficient in law to abate the action, or whether it stated facts sufficient to abate the petition of the rolling mill, had never been presented to the court of original jurisdiction.

It is not strange that the appellate tribunal was unable to find a place for such a pleading in its procedure. The statute (section 1360, R. S. 1881), provides that "in all cases where, under existing or future laws of this State, a person has the right to appeal from the circuit to the Supreme Court, an appeal may be had from a special term to the general term of said superior court. * * It may affirm or reverse the judgment of the special term." If the judgment is reversed, "it shall * * * enter of record the error or errors found therein and remand said cause to the special term, with instructions as to said error or errors, and the special term shall carry into effect the instructions of the general term."

This leaves no room for the general term to determine anything but those matters which were determined by the special term. No new issues of either fact or law are authorized to be presented to the general term that were not passed on by the special term, because it is only upon the error or errors committed by the special term that a reversal of its judgment can be ordered by the general term; and those must be errors of law, because it has been settled by this court that the assignment of errors in such appeals is governed by the rules for appealing from the circuit to the Supreme Court, and, on those appeals, the assignment of errors can only be of matters of law. *Bartholomew* v. *Preston,* 46 Ind. 286; *Wilson* v. *Vance, Admr.,* 55 Ind. 584; *Patterson* v. *Indianapolis, etc.,*

*Plank Road Co.*, 56 Ind. 20; 1 Burns R. S. 1894, section 667 (R. S. 1881, section 655).

If errors are not assigned in the general term, no question can be presented on appeal to this court.    *Johnson* v. *Kohl*, 55 Ind. 454.

At all events no reversal can be ordered by the general term, except for errors which the special term committed in the cause while pending before it.

The inquiry naturally arises, what must, or what can, the general term do with new pleadings filed before that tribunal to defeat the action either in abatement or in bar?    The only answer is, it can do no more with such pleadings filed there for the first time in the cause than this court can in a similar case.    It is true, questions of fact may be raised both in the general term and in this court, on appeal, for the first time, if they are incidental to the jurisdiction of the appellate tribunal in that particular appeal, and not otherwise.

The general term did not err in giving no attention to the plea.

The next, and last, specification of error raises the question whether the general term erred in reversing the action of the special term in denying the petition of the rolling mill.    That must depend on the question whether the special term erred in overruling or denying said petition.    A summary of that petition is as follows:

1.  The car company is indebted to the rolling mill in the sum of $18,338.15.

2.  Sets out so much of the Voorhees case as relates to the appointment of the receiver.

3.  Avers that Voorhees was the purchasing agent of the car company at the time of the institution of the suit; and Henning was its financial agent when appointed receiver; but is not charged that either was a stockholder in the car company.

4. That the bill filed by Voorhees did not purport to be in behalf of all the creditors of the corporation, but for himself only.

5. That the car company did not employ counsel to resist or supervise the receivership, but suffered the same to be carried on by the court.

6. That the attorneys who filed the bill for Voorhees became the attorneys of the receiver. It is not charged that they were not properly conducting the receivership. *Vide* Beach Rec., section 263.

7. That on November 21, 1890, the receiver made a report, which is set out *in haec verba.*

In this report he states that on coming into the receivership, the car company had in process of execution four contracts, as follows:

1. A contract of March 19, 1890, with the Columbus, Hocking Valley and Toledo Railway Co., for the manufacture of 1,500 cars.

2. A contract with the same company for the manufacture of 100 cars.

3. A contract dated June 4, 1890, with the Columbus, Shawnee and Hocking Co., for the manufacture of 500 cars.

4. A contract with the Toledo and Ohio Central Railway Co., for the manufacture of 250 cars.

It appears, under the first contract, that the cars were to be built under what is known as a car trust, whereby the purchasing railroad company was to make a small cash payment and secure the remainder by notes and mortgage on the cars.

That the car company (in order to raise funds with which to buy the material and construct the cars) made an arrangement with S. A. Fletcher & Co., bankers, whereby they agreed to take the notes and also to cash

Voorhees *v.* The Indianapolis Car and Manufacturing Company *et al.*

the drafts to be drawn for the cash payments.    The cars were to be delivered in lots of 50.

That to secure Fletcher & Co. for moneys advanced and to be advanced on account of the notes, the car company, on the 16th of June, assigned and transferred its contract to them, and the railroad company consented to said arrangement.

That at the time of the appointment of the receiver, 1,400 cars had already been built and delivered under the first contract, and Fletcher & Co. had from time to time paid to the car company the cash on all the drafts, and also *"the full proceeds of all the notes,"* so that Fletcher & Co. had paid the car company in full for the entire contract.

That the last 100 cars were in process of manufacture, and that it would require but a small outlay on the part of the receiver to entirely complete the said 100 cars. If not done the railway company would refuse to execute the notes already sold to and paid for by Fletcher & Co., amounting to $520,380, or to pay the outstanding drafts cashed by Fletcher & Co., to an amount of $14,000.

That the railway company, soon after his appointment, demanded said 100 cars in fulfillment of its contract, and threatened heavy damages for long delays by the car company in case of failure to deliver said 100 cars.    That an attachment suit against the car company and railroad company was pending in Ohio, and if he asserted any interest in the fund it would be held in garnishment.

Also, if this contract was left uncompleted, the railroad company would insist on setting off the damages in a large amount.

Also, that the second contract with the same company had not been entered upon, and by completing these 100 cars at small outlay he could go on and perform

the second contract at a profit, as he could keep the shops going, the men employed and use the material on hand and convert it into cash, amounting to $32,500.

In conclusion he said:

"In view of all these circumstances, the receiver believed that it was to the interest of all persons concerned in his trust to finish said 100 cars at the expense of the trust and deliver them to the railroad company, leaving all controversies with reference to damages growing out of the garnishment proceeding (the garnishment proceeding having been begun in Columbus, Ohio) to be settled by the railroad company, said S. A. Fletcher & Co., and said Snyder (garnisher)."

That he had made an arrangement that any damages for delay should be deducted out of the drafts owing ($14,000) to Fletcher & Co., and this and the garnishment should be assumed by Fletcher & Co. And he accordingly, as soon as possible after this arrangement, notified said company that he had no claim for any part of the notes or money called for by said contract.

Under the second contract with the same company, he showed that he had completed the 100 cars, for which he had received in cash $32,175, and the balance would be paid in a few days.

Under the third contract (five hundred cars) with the Columbus, Shawnee & Hocking Railway Company, which likewise provided for a car trust, he showed that a similar arrangement to the first had been made between the car company, Fletcher & Co. and the railroad company, whereby Fletcher & Co. were to take the notes and drafts and pay the proceeds to the car company.

That only 100 cars had been delivered at the time of the appointment of the receiver, under this contract. That the second 100 were in process of completion, and "it required but a small amount of additional work and

material to fully complete said cars ready for delivery. Said car company, before the appointment of the receiver, had received from S. A. Fletcher & Co. the full proceeds of the price of the 100 cars which had been delivered, and of the 100 cars which were in process of manufacture, by said S. A. Fletcher & Co. advancing to said (car) company the proceeds of the notes, which, under the contract, would be executed on account of said 200 cars when all of the cars provided for in the contract had been delivered.     *     *     *     Nothing had been advanced or paid by them to the car company on account of the remaining 300 cars."

That by carrying out the contract, the receiver would be entitled to build these 300 cars and get the proceeds in full.

The receiver said:

"In view of these facts, he was of the opinion that it was to the interest of all persons concerned in the trust, to finish and deliver the second 100 cars and permit said Fletcher & Co. to collect the drafts which had been drawn on account of the same, and in all other respects to carry out the contracts in reference to such cars which had been entered into between the car company, the railroad company and Fletcher & Co., as herein set out. He did, therefore, finish said cars and deliver them to the railroad company, and, as he is advised, the cash payments had therefore been made to S. A. Fletcher & Co."

And, as to the fourth contract, he reported that no part of it had been performed when he was appointed, but that he had continued the contract and was in the performance of it.   He recommended that his action in the premises should be confirmed.

With the report the receiver set out the various contracts, assignments, etc.

Judge Taylor ratified the action of the receiver in these words:

"Comes now, Matthew Henning, receiver herein, and files the following statement in reference to the contracts held by the defendant company at the time of his appointment as receiver herein and of his proceedings in reference thereto. (H. I.) And the court being advised thereto, it is now ordered that the proceedings of said receiver in reference to said contracts be in all things approved, ratified and confirmed."

8. The rolling mill, in its petition, says that such action was prejudicial to its interest and the other unsecured creditors. But in what way is not set out; and says that on behalf of itself, and all other creditors standing in like situation, who may desire, it should be granted such a standing in court as will enable it fully to present its rights and the rights of the general creditors upon an application to vacate or modify said order of November 21, 1890, in such manner as they may desire, to preserve such exceptions as they may deem advisable in order to procure a review of the judgment of this court, should it decide adversely to such application, etc.

9. The petition then charges that from examination of the books of the car company, it believes that there are "grave questions" connected with the administration thereof, prior to the appointment of the receiver, and that because of the fact that the receiver sustained the relations aforesaid, the petitioner ought to be permitted to occupy such relation or standing in this case, that it would have the right to make such application directly to the court, in its own right as a party, and not to be compelled or required to rely either upon the plaintiff or the receiver. What the "grave questions" are, or who were the parties implicated, is not stated in the petition.

The petition then avers that the rolling mill has prepared and brings in and offers to file a complaint, and to that end says that "your petitioner ought to be admitted as a plaintiff herein."

It states:

1.  The amount and nature of its claims.

2.  The history of the Voorhees case.

3.  Since October 31, 1882 (as much as ten years), the car works had been insolvent.

4.  The car works was organized as a manufacturing corporation on March 1, 1881, with $100,000 authorized capital; that Millard subscribed $40,000, McKeen $30,-000, Howard $30,000, of which only one-half was paid by each stockholder; that these three persons had always been directors; that on November 7, 1882, they made a fictitious dividend of 50 per cent. and credited it upon their stock.

5.  That corporate meetings, annual invoices, inventories, etc., had not been made as required by the by-laws.

6.  That on and after September, 1886, the car company gave the mercantile agencies false statements, and neglected to make the annual statements required by statute.

7.  That on March 1, 1889, the car company made an arrangement with the Empire Lumber Company of Tennessee, also insolvent, whereby each company loaned the other its credit by interchange of bills and notes without consideration, and thus each used the other's paper in bank for discount; and that the car company was liable on paper of this class to the amount of $350,000.

8.  At the failure, the liabilities of the car company were about $800,000; its assets about $200,000, and that McKeen, Howard and Millard ought to "pay over to the receiver herein, or some other receiver appointed for the

purpose," $500,000 to make a fund out of which to pay off the debts of the car company.

9. A recitation of the two car trusts contracts, viz., the Columbus, Hocking Valley and Toledo Railway Co. contract, and the Columbus, Shawnee and Hocking Railway Co. contract.

It was stated at length that the cars under the first contract cost $592,380, and under the second contract $190,990; that the price was to be paid largely in notes; that Fletcher & Co. agreed with the car company to purchase the notes and "from time to time, as said defendant corporation should need moneys in its business, advance and loan to it the moneys that it should so need as and on account of the notes that it had so agreed to take;" whereby the car company had received from the bankers about $650,000. Then follows a repeated statement in detail as to the completion, etc., of the one hundred cars under each contract as set out in the petition.

In this connection it is said, "plaintiff does not know and can not therefore charge that at the time of the making of the contract to take said notes, Fletcher and Churchman had knowledge that said defendant corporation was actually insolvent, but plaintiff does aver and charge that shortly after it had begun to loan and advance the moneys upon the faith that it would get said notes when they would be executed, and long before the appointment of the said receiver," they acquired such knowledge, and having such knowledge, Fletcher and Churchman concealed from the public, and the parties dealing with said company, its true condition and did thereby procure it to become further indebted to its creditors for the purpose of saving themselves from loss upon the moneys advanced, and realize the profits upon the notes to be discounted. But there is no charge that Fletcher & Co. or any other person made any false repre-

sentations to the rolling mill, or any other specific creditor (none of whom are named) concerning the financial condition of the car company.

It is then charged, as a matter of law, that because Fletcher & Co. had furnished the car company the money aforesaid, and failed to inform persons dealing with the car company of its insolvency (no person or corporation is named as having made any inquiry), Fletcher & Co. waived and lost their right to have the notes, etc., "whereby, and by reason whereof, a right of action has accrued to this plaintiff on its own behalf and on behalf of the other creditors aforesaid, to require said Fletcher and Churchman to account to this court, either directly to the plaintiff and to the other creditors, or to the receiver in an action to be brought by him for that purpose, for the moneys, drafts, and notes so taken by said Fletcher & Co."

The prayer asks:

"1. To extend and enlarge the scope of the receivership so that it may embrace and cover the facts herein above set forth.

"2. That the alleged liabilities of the said directors might be established and the fund brought in, viz., that they should be made liable in this action for their alleged several unpaid subscriptions to the capital stock and for their statutory liabilities in failing to publish notice, and for their alleged equitable liabilities in permitting the corporation to run, knowing it to be insolvent.

"3. That said Fletcher and Churchman may be required to bring into court and to surrender to said receiver all and singular the notes that have been executed to them by said railway companies, and pay over the moneys they have received.

"4. That said Francis M. Churchman, Stoughton J.

Fletcher, William R. McKeen, Charles S. Millard, and William B. Howard may be made defendants to this action, and that they may be required to appear and answer at such times as the court may order, and that process be issued against them.''

The complaint is not verified.

The complaint of Voorhees on his note, and asking for the appointment of a receiver, was broad enough to justify the order of appointment, which provided that: ''It is now ordered that Mathew Henning be hereby appointed receiver of all the property and assets, real and personal property, moneys, rights, credits, effects and choses in action of whatever nature, of and belonging to said defendant, the Indianapolis Car and Manufacturing Company, and as such he is hereby authorized, empowered and directed to immediately take into his possession, as such receiver, all of the said property and assets, moneys, rights, credits, effects and choses in action, of whatever nature and description and wherever situated   *   *   , until the further order of this court, and in all things subject to its orders and directions to carry on, manage and operate the business and plant of said defendant, to collect and otherwise convert into money the property and assets of said defendant under the orders and directions of the court, as they shall from time to time be given, and to hold and retain all such assets and property and the proceeds thereof in his custody and possession and report concerning the same to this court. *   *   And said receiver is further authorized and empowered to prosecute and defend, in his own name, as such receiver, all necessary actions, suits and other legal proceedings.'' He was ordered to file an inventory of all property and assets coming into his hands as such receiver, together with an appraisement thereof, *   * and also that he report the names of the creditors and the

amounts of indebtedness due them, respectively, from said defendant, as far as the same shall have come to his knowledge. The receiver was ordered to take an oath that he would faithfully discharge his duties and give bond in the penalty of $250,000, all of which was done.

It seems clear to us that there was no occasion to enlarge the scope of the receivership to secure all the relief sought in the petition and complaint or creditor's bill tendered and offered to be filed. High Rec., sections 453, 454.

By his appointment, he became, according to the better doctrine, and stands as the representative both of the creditors of the corporation and the stockholders. He is not, therefore, the agent or representative of the corporation exclusively, but is to be regarded as a trustee for both creditors and shareholders. High Rec., section 314.

While the receiver of an insolvent corporation is thus treated as the representative of both creditors and shareholders, so far as any beneficial interest is concerned, yet, for the purpose of determining the nature and extent of his title, he is regarded as representing only the corporate existence itself, and not its creditors or shareholders, being vested by law with the estate of the corporation and deriving his own title under and through it. For purposes of litigation, therefore, he takes only the rights of the corporation, such as could be asserted in its own name, and upon that basis only can he litigate for the benefit of either shareholders or creditors, except where acts have been done in fraud of the rights of the latter, but which are valid as against the corporation itself, in which case he holds adversely to the corporation. High Rec., section 315; Beach Rec., section 639.

All the actions proposed to be brought in the com-

plaint tendered, if maintainable, were such as the receiver had a right to maintain, and it was his duty to maintain and prosecute them. High Rec., sections 317, 324; Beach Rec., sections 624, 668, 669.

The petition and proposed complaint, or creditor's bill, were nothing more nor less than a proposal on the part of the rolling mill to usurp the functions of the receiver, or practically to appoint another receiver. The petitioner had no right to do this. Beach Rec., section 167.

If one creditor could do so, each one could, and the purposes and objects of a receivership would be broken down and destroyed.

All that is said in the petition against the receiver's conduct might be material to petition to remove him and appoint a successor, but those facts do not justify supplanting him by a person not a receiver. 20 Am. and Eng. Encyc. Law, 198, 199, 200, 201, 202, 3–4–5, and authorities there cited.

Any creditor, after establishing his claim by intervening in the original suit in which the receiver is appointed, acquires a sufficient standing in court to ask the court for orders and directions on the receiver in furtherance of the interest of creditors. Beach Rec., section 654; High Rec., sections 255, 256.

If he disobey such orders such creditors may ask for his removal by the court appointing him. High Rec., sections 824–828; Beach Rec., sections 783–787; 20 Am. and Eng. Encyc. Law, 198–207, and authorities there cited.

On the refusal of the court to take such action as will secure and protect all concerned, there would be ground for complaint in an appellate tribunal. We are of opinion that the general term erred in reversing the order of the special term denying the petition.

Jackson v. The Pittsburgh, Cincinnati, Chicago and St. Louis Ry. Co.

The judgment is reversed, with instructions to affirm the judgment of the special term.

Filed Feb. 8, 1895.