## The Wayne International Building and Loan Association v. Moats et al.

[No. 18,314.    Filed December 10, 1897.]

Mortgages.—*Waiver of Priority by Senior Mortgagee.—Mechanic's Lien.*—Where a junior mortgagee, in consideration of a waiver of priority by the senior mortgagee, agrees that he will see that the money he advances is applied to the improvement of the property, but, in violation of his agreement, permits mechanics' liens to be obtained against the property, he will be obliged to satisfy such mechanics' liens out of his prior lien, and so protect the senior mortgagee. *pp. 127, 128.*

Building and Loan Association.—*Scope of Agent's Authority.*—Where an agent of a building and loan association has authority to solicit applications for stock and to effect loans, it is within the scope of such agent's authority to bind the association by an agreement that the money advanced to a borrower should be used in the improvement of the mortgaged premises. *p. 129.*

Liens.—*Junior Lien Holder.—Marshaling of Senior Liens.*—A junior lien holder cannot complain as to the order of marshaling liens senior to his own. *pp. 129, 130.*

Mortgages.—*Waiver of Priority by Senior Mortgagee.—Rights of Junior Mortgagee.*—Where a senior mortgagee waives his priority in favor of a junior mortgage for a larger amount, the junior mortgagee is subrogated to the rights of the senior mortgagee to the amount only of the senior mortgage. *pp. 130, 131.*

From the Marion Superior Court. *Affirmed.*

*D. W. Howe* and *Morgan & Morgan,* for appellant.

*W. H. H. Miller, J. B. Elam* and *D. A. Myers,* for appellee.

McCabe, J.—The appellant sued the appellees to foreclose a mortgage on real estate, given by appellee Moats and wife to secure a bond executed to appellant by said Henry H. Moats for a loan of $3,000.00.

Cross-complaints were filed by certain defendants, setting up and seeking to enforce against the same real estate liens of mechanics and materialmen, and judgment liens.

The issues made were tried by the court, resulting in a special finding of the facts, upon which the court stated conclusions of law, to the second of which the plaintiff, appellant, excepted. The court rendered judgment pursuant to the conclusions of law, and afterwards overruled appellant's motion to modify the decree. The second conclusion of law, and the refusal of the court to modify the decree are called in question by the assignment of errors. The refusal to modify presents no other question than that presented by the second conclusion of law, that being the only question before us on this appeal.

The substance of so much of the facts found by the court as are necessary for the decision of the question presented by the second conclusion of law, are that, on September 7, 1895, the defendant, William H. Perkins, sold and conveyed to the defendant, Henry H. Moats, a certain described lot in the city of Indianapolis, and on September 9, 1895, in consideration of said conveyance, said Moats executed to said Perkins four promissory notes of $200.00 each, payable in one, two, three, and four years after the date thereof, with interest at six per cent. per annum, and at the same time executed a mortgage on said lot, in which his wife, Emma C., joined, to secure said notes, which mortgage, within forty-five days, was duly recorded in the recorder's office of Marion county; that afterwards, on November 18, 1895, the bond and mortgage sued on were executed by said Moats and wife to appellant upon said real estate to secure the payment of said loan of $3,000.00, which mortgage was duly recorded in the same recorder's office within forty-five days; that afterwards, on November 30, 1895, said Perkins executed and caused to be entered of record upon the margin of the record of his said mortgage a waiver in the words and figures following: "I hereby waive the

lien of this mortgage and make it second and junior to the one executed by H. H. Moats to the Wayne International B. & L. Assn. for $3,000.00.  Nov. 30, 1895.  Wm. H. Perkins.  Attest: W. E. Shilling, R. M. C., by Benjamin Franklin, Dep."  That said loan was made by said association for the purpose of enabling said Moats to erect a dwelling and appurtenant improvements upon said real estate, to the value of $3,000.00, it being the intent of said Moats and said association that the improvements so erected, together with said real estate, should afford security for the amount of said loan and the amount due said Perkins, and that in consideration thereof the latter executed the waiver aforesaid.  That Charles W. Phillips, agent of said association, in addition to the above, promised said Perkins, on behalf of said association, that the money so loaned should all be paid out for and on account of labor and material used in constructing said improvements, and that he would, for and on behalf of said association, see that said money was so applied and that all such accounts were paid.  Said agreement being made prior to said waiver and in consideration thereof.  That prior, and at the time of the execution of said mortgage to plaintiff, said agent Phillips was located in Indianapolis, and his duties as such agent as authorized by plaintiff and as usually exercised by him in course of his agency, were to solicit applications for stock, take applications for loans, and submit them to the home office of the plaintiff for approval, and make monthly collections.  When money was remitted to an applicant for a loan, it was by check, payable to such applicant, mailed to said Phillips, and by him delivered to the applicant.  The plaintiff had given Phillips no other or different authority than as herein stated.  It was through him, as such agent, that plaintiff's loan was effected.  Afterwards,

relying upon said waiver, said plaintiff advanced to said Moats upon said loan the sum of $2,600.00, all of which was paid to said Moats, except the sum of $600.00 which was paid to the Russell Lumber Company for materials furnished by it for improvements hereinafter mentioned, and which plaintiff was compelled to pay to prevent said company from filing and enforcing a mechanic's lien and in order to protect the lien of its mortgage. Shortly after the execution of the mortgage by Moats and wife, said Moats began the erection of a dwelling house, barn, and out house upon the real estate hereinbefore described, to wit, about December 10, 1895, but about May 1, 1896, and before the completion of said house, said Moats abandoned work thereon, and other improvements, which were not completed. That said Moats paid out for labor and material used therein about $900.00, including said $600.00 paid to the Russell Lumber Company.

The court finds all the facts necessary to constitute three several mechanics' liens on said real estate, incurred in the erection of said dwelling, all of which had been assigned to the cross-complainant, Gardner, dated December 17, 1895, January, 1896, and January 8, 1896, aggregating $155.13. There being no question about these liens and dates thereof, or amounts, the facts are omitted.

The court found the following judgments recovered against said Moats, and that they, at the time of the recovery of each, became liens on said real estate, with dates, amounts, and names of judgment creditors: Boothby, November 2, 1895, for $390.00; Aufderheide & Zumpfe, November 11, 1895, $71.70; Florea & Seidensticker, November 16, 1895, $79.59; which last judgment is owned by John Furnas.

The material used and labor performed in the erection of said dwelling house were of the value of

$875.00. It would have required work and material to complete said dwelling of the value of $600.00 at the time it was abandoned, and now of the value of $700.00, and if completed said dwelling would be worth $2,000.00. The value of the materials and labor used in the erection of the barn and out house were and are of the value of $125.00. The value of the lot was and still is $1,000.00. There are no other liens upon said property. The total amount due the plaintiff from Moats is $3,151.68. There is now due from Moats to Perkins on the first note, principal and interest, $220.41; and on the amount that will be due on maturity of each of the other notes to Perkins from Moats is stated. And the principal and interest of all of said notes from Moats to Perkins to this date is $875.41. There is due the plaintiff for costs of protecting said dwelling against the weather after its abandonment by Moats, $44.50. And there is due Perkins for taxes paid on the property $1.50.

The second conclusion of law is: "That the proceeds arising from the foreclosure sale should be applied as follows: (1) To cost and accruing costs; (2) to the plaintiff, $44.50; (3) to cross-complainant Perkins, $1.50; (4) to the payment of the amounts due upon mechanics' liens set forth in the foregoing finding, $155.13; (5) to the plaintiff, $720.28; (6) to the amounts due on the judgments set forth in the foregoing finding of facts, to wit: the judgment of Arthur L. Boothby, $390.00; Aufderheide & Zumpfe, $71.70; John Furnas, $79.59; (7) to the plaintiff, $24.00; (8) to the cross-complainant Perkins, $220.41, now due, with other sums to become due as hereinafter found; (9) to the plaintiff, $2,406.81; (10) the residue, if any, to be paid into the office of the clerk of this court to abide the further orders thereof."

There would be no difficulty in determining the

priorities of the various liens had there been no agreement waiving and changing some of the priorities with the agreement incidental thereto. The only objection urged against the priorities as fixed by the trial court relates to the first application of the proceeds of the foreclosure sale to the plaintiff's debt. The trial court, in its marshaling of the liens, places the mechanics' liens first, $155.13, excepting the cost of the proceeding and two other small items falling in the same category—taxes paid by Perkins, $1.50, and costs of protecting the abandoned and unfinished house from the weather, paid by appellant, $44.50. The superior court places next in the order of priority $720.28 to be paid to the plaintiff. But plaintiff contends it ought to have been $875.41, an amount equal to the Perkins mortgage, the priority of which was waived and yielded to and in favor of the plaintiff's mortgage. But the facts found show, that at least a part of the consideration of that waiver was the agreement of the plaintiff, through its agent Phillips, who effected the loan, to see to it that the money loaned should be applied to the construction of the dwelling and appurtenant buildings on the real estate in question, so as to protect it from mechanics' and materialmen's liens thereon in the construction of said buildings, in order to preserve Perkins' mortgage security, which, by the agreement, became second to the appellant's mortgage, in priority. And it further appears that the breach of that agreement on the part of the appellant resulted in fastening the mechanics' liens on the property, and in placing them ahead of both mortgages. And the trial court deducted the amount of those liens, viz.: $155.13, out of the $875.41, the amount of the Perkins mortgage, the priority of which, by the waiver mentioned, was given to the plaintiff's mortgage. That deduction leaves the amount, $720.28, the first application of the

proceeds of the sale, to be made to plaintiff's mortgage. Such a deduction in just such a case was upheld by our Appellate Court in a most careful and well considered opinion in *Thorpe Block Saving and Loan Association* v. *James,* 13 Ind. App. 522.

But it is insisted that the contract of Phillips, the appellant's agent, was void in so far as it purported to bind appellant to see to the application of the loaned money to the payment of the expenses of the construction of the dwelling and buildings mentioned, because beyond the scope of his authority. However, appellant seeks to hold that part of the agreement good and binding which waived the priority of Perkins' mortgage in favor of, and to make appellant's mortgage prior to it. Unless appellant can hold that part of the agreement intact, valid, and subsisting, it is in a much worse condition than that in which the court has placed it in the marshaling of the liens. The facts found, we think, are amply sufficient to show that appellant's agent, Phillips, had authority to make both parts of the agreement on its behalf, as well as that part alone which is favorable to the appellant. The whole related to the act of effecting the loan, Besides, it would be monstrous to permit appellant to hold the consideration yielded to it for its agreement to secure the proper application of the loaned money, and yet hold that agreement void for want of authority in its agent to bind it by such stipulation.

Appellant further contends that the conclusion was wrong in not placing the judgment liens next to the payment of the costs and mechanic's liens, as we understand its contention. That, however, could not benefit appellant, but would positively injure it by placing it $541.29, the aggregate amount of the judgment liens, farther off from the money to be distrib-

uted down the line of the procession of the marshaled liens. If any one had a right to complain of the court's marshaling on that point it would be either Perkins or the holders of the judgments. The judgment liens are next in priority to the Perkins mortgage and the mechanics' liens, and neither the judgment lien holders or Perkins are here complaining. The mechanics' liens in this case were only prior to some of the liens, so far as the buildings were concerned, and not as to the land; but by common consent of all parties, in view of the excess in value of the buildings over the amount of the mechanics' liens, they have been treated as prior in respect to both land and buildings. The judgments, however, have been placed by the court next in line of priority to the payment of the balance of the Perkins priority, equitably assigned to appellant by the waiver, after deducting the loss occasioned by its breach of duty, namely: $720.28. Whether or not that was the proper place in the line for the judgments, we do not here decide, as it is not questioned by either the judgment lien holders or Perkins, and the appellant has no right to complain because its mortgage was junior thereto.

However, appellant's learned counsel take another tack against the order of the liens as marshaled by the court. They contend that by the Perkins waiver in appellant's favor, it not only obtained priority to the amount of the Perkins mortgage, $875.41, but that it obtained a priority over all liens junior to the Perkins mortgage to the full extent of its loan of $3,000.00, or so much thereof as it actually furnished to Moats.

But that would be a strange doctrine, indeed; a doctrine, it is believed, to which no court, either of law or equity, ever yet gave its assent. The terms of the waiver were simply to make the Perkins mortgage second to appellant's mortgage, and, in equity, it is

held that the appellant would be subrogated to the rights of Perkins to the amount of his mortgage, and, after that, postponed. *Raleigh National Bank* v. *Moore,* 94 N. C. 734; *Spaulding* v. *Crane,* 46 Vt. 292; *Thorpe Block Saving and Loan Association* v. *James, supra,* and cases there cited.

If appellant's contention on this point could be maintained, it would result not only in making appellant's junior mortgage senior to Perkins' mortgage, and clothing the appellant with the priority of the Perkins mortgage, but it would also make the agreement effective to bring up the rank of appellant's mortgage in seniority ahead of the judgment liens, all of which were actually prior and superior to appellant's mortgage. This would be putting it in the power of two lien holders, by contract between themselves to displace the liens of all other lien holders on the same property without the knowledge or consent of such other lien holders. There was no error in the conclusions of law. The judgment is affirmed.