ORBISON ET AL. v. KLAYER, RECEIVER, ET AL.

[No. 25,778. Filed March 14, 1933. Rehearing denied June 30, 1933.]

*Chalmer Schlosser, Joseph Williams, Telford B. Orbison, Larz A. Whitcomb, Louis B. Ewbank,* and *Samuel Dowden,* for appellants.

*U. S. Lesh* and *R. L. Lowther,* for appellees.

ROLL, J.—This is an action brought by Harry H. Klayer (who, since the commencement of this action, has been succeeded by U. S. Lesh), as receiver of the Indiana Citizens Savings and Loan Association, to recover a certain amount of money from Harry J. Sommers, appellee herein, and appellants, as directors of said association on account of loss sustained by said association by virtue of a certain alleged ultra vires contract entered into by said association and the appellee, Harry J. Sommers, and on account of loss sustained by said association because of certain negligent acts of appellants, to wit: entering into said alleged ultra vires contract and employing irresponsible agents, and on account of loss sustained by individual members of said

association (not interpleaded nor made parties) who were induced to become subscribers to said association by virtue of fraudulent statements made to them by agents of said association.

The complaint is in one paragraph and as the special findings follow the complaint and as the exceptions to the conclusions of law present the same question, it is not necessary to set out the complaint in full in this opinion.

An answer in general denial was filed by appellants and also three additional paragraphs (which are, in effect, argumentative denials), to which appellee Klayer, receiver, filed a reply in general denial.

The second, third and fourth paragraphs of answer were to the general effect, that as directors of the corporation of which plaintiff is receiver, and acting in good faith under the advice of competent attorneys at law, defendants (appellants) fixed the "membership fee" to be paid by subscribers for the stock of the loan and savings association at fifty cents per share (in accordance with §5084, Burns Ann. St. 1926), and executed the agreement on behalf of such association to pay the soliciting agent forty-five cents per share for his services in obtaining stock subscriptions, and prescribed that such subscriptions should be taken only on blanks which fully recited said facts and contained an express stipulation that nobody had authority to alter the agreement therein contained or to bind the association to any statement that it did not contain, and that so acting as directors, they required a receipt to be given for all money received, which also recited just what each portion of such money was paid for. (A copy of the contract between the association and Mr. Sommers, a copy of the subscription agreement, and a copy of the stock certificate were set out in the second paragraph of answer.) Each paragraph of answer specifically

denied that either of the defendants authorized, participated in or had knowledge of any fraudulent acts or statements of the agent so employed or any solicitor, by which anybody whatever was wrongfully induced to subscribe for said stock or to pay membership fees.

The first nine findings of fact relate to the organization of the Indiana Citizens Savings & Loan Association, the number of directors, the adoption of the by-laws for the corporation and the submission and approval of the contract with H. J. Sommers, and as no question is predicated thereon, we need not set them out in full. The contract is set out in the 9th finding, and, omitting the signatures, is as follows:

"AGREEMENT.

"THIS AGREEMENT, made this 25th day of February, 1925, by and between Indiana Citizens Savings and Loan Association of Indianapolis, Indiana, County of Marion, party of the first part, and H. J. Sommers doing business in Indianapolis as H. J. Sommers, party of the second part, WITNESSETH:

"That said parties hereto, each in consideration of the covenants and agreements of the other, and of the sum of one dollar ($1.00) paid by each to the other, the receipt of which is hereby acknowledged, do hereby mutually and respectively covenant and agree with each other as follows, viz.:

"Said party of the first part hereby appoints said party of the second part its exclusive fiscal agent for the sale of all its capital stock, either authorized, or to be authorized, and said first party further agrees by resolution of its Board of Directors to authorize the increase of its capital stock in such amount and at such times as may be necessary.

"Said party of the second part hereby agrees to sell said stock at ten dollars ($10.00) per share; plus a membership fee of fifty cents ($.50) per share, and require each purchaser to pay in (or agree to pay in) not less than five cents ($.05) a month on each share purchased; and out of such

membership fee said party of the second part shall receive the sum of forty-five cents ($.45) from each membership fee collected for his services as fiscal agent, said sum of forty-five cents ($.45) to include the commissions of the salesmen employed by him, as may be agreed on between him and them, also the cost of printing necessary circulars and advertising.

"Said party of the second part shall have as much time as he deems necessary for the sale of said capital stock not exceeding five (5) years; and each party hereby convenants to co-operate with and assist the other in promoting their common interests and each shall let the other have access to its or his books and records, at all reasonable hours in pursuance of such common purpose.

"Said parties hereby agree to make settlement with each other twice a week as follows, viz.: on every Wednesday, for the sales made on Saturday, Monday and Tuesday of each week; and on every Saturday for those sales made on Wednesday, Thursday and Friday of each week, all checks accepted from purchasers to be made payable to the Indiana Citizens Saving and Loan Association to be turned in at the next settlement, together with the cash received and commissions then due shall be paid.

"It is further agreed that party of the second part shall, with the concurrence of the Executive Committee of party of the first part, name the secretary and all assistant secretaries during the life of this agreement, also, that said second party shall be reimbursed for such expenditures incurred by him for the organization and operation of the company.

"It is further agreed that said party of the second part shall devote all of his time in the developing of the interests of said party of the first part and shall in no way be interested in any other building and loan association or give any of his time to any other commercial enterprise during the life of this contract.

"It is further agreed that this contract can not be sold, transferred or assigned by said party of the second part to any other person or persons without

the written consent of the Executive Committee of said party of the first part."

The other findings are as follows:

10. Following the execution of the contract set out in the preceding finding said H. J. Sommers, with the aid of a number of sub-agents and stock salesmen of his own selection, entered upon a campaign for the sale of stock in said Association. As a part of the plan and campaign for the sale of said stock said Sommers, with knowledge and acquiescence on part of the several defendants, prepared printed forms of papers to be signed by subscribing members or by the Association, requiring the purchasers of stock to take the same in the so-called units of not less than ten shares each so that the membership fees to be paid for the privilege of obtaining stock would be in multiples of $5.00 for each unit.

11. The printed form of the application for shares of stock to be signed by prospective shareholders was as follows:

### "APPLICATION FOR INSTALLMENT SHARES.

#### "INDIANA CITIZENS SAVINGS & LOAN ASSOCIATION,

##### "INDIANAPOLIS, INDIANA.

"Number of Units............ Dated............ 192......

"The undersigned hereby subscribe for............ units of the capital stock of the INDIANA CITIZENS SAVINGS & LOAN ASSOCIATION, of the par value of One Hundred Dollars ($100.00) each, payable in monthly installments beginning .......... .......... 192......, and before the tenth of each month thereafter; such installments to be not less than fifty (50c) cents per unit each month, and is withdrawable as provided for in the by-laws.

"For the purpose of safeguarding the capital and earnings of the Association, and to comply with the laws of Indiana, requiring all expenses of the Association to be paid from earnings only, I agree to pay with this subscription a membership premium of five ($5.00) dollars per unit to establish a reserve fund and defray the expenses

of organization, extension, equipment and obtaining subscriptions, and can not be withdrawn, but is transferable.

"No person has authority to change or alter the terms of this subscription, or to bind the Association by any statement not contained herein.

"Name ........................................

"Address ...................................:

"Make checks payable to the Indiana Citizens Savings & Loan Association."

The printed form for the Association to sign and deliver to the subscribing members upon the receipt of the membership fee was in the facsimile form as follows:

"INCORPORATED UNDER THE LAWS OF INDIANA.

"INDIANA CITIZENS SAVINGS & LOAN ASSOCIATION.

"No. ............

"THIS IS TO CERTIFY THAT.......................
of ............................................................. has paid
............................................ Dollars ($...............)
as membership premium on ............ units giving h........ a life membership in the Indiana Citizens Savings & Loan Association, provided ............ complies with the regulation of this Association regarding renewals of active membership within one year from the date of any total withdrawal. Transferable only on the books of the Association by the owner in person or by attorney.

"Witness the seal of the Association, and the signatures of its duly authorized officers affixed at its general offices in the city of Indianapolis, this ................. day of ............................. 192.......

"Secretary

"...................................................

Vice-President.

UNITS $100.00 EACH

and on the back was the form as follows:

"For value received ............ hereby sell, assign and transfer unto .................................................

all right, title and interest to the within membership in the INDIANA CITIZENS SAVINGS & LOAN ASSOCIATION.

Witness:

......................................     ...........................................

"Dated this ............ day of .................... 192....."

12. The instruments as recited in the preceding finding were so drawn as to be calculated to deceive persons of ordinary intelligence who might be solicited to become members of said Association as to the nature of the contractual relations which would be entered into in becoming shareholders in said Association; and particularly said instruments were calculated to lend color to any false statements which might be made by the soliciting agents as to the rights which subscribing members would derive from the payment of the membership fees.

13. In carrying out his campaign for the sale of stock in said Association said H. J. Sommers, in person and through his several sub-agents and stock salesmen, systematically and with uniformity represented to prospective purchasers that upon sums which they would pay as membership fees they would receive dividends of not less than seven per cent per annum and that the paper to be issued in evidence of such payments was in the nature of a deposit or stock certificate which partook of the qualities of commercial paper issued by banking corporations; and the persons who were induced to become members of said Association believed said representations and relied thereon in entering into the contracts for shares of stock therein.

14. Pursuant to the plan and as a result of the campaign and activities of said Sommers and his sub-agents and stock salesmen as previously stated in these findings various persons were induced to and in fact did make payments to said Association in gross amounts as shown by its books and records now in the hands of the plaintiff receiver of $51,-478.64. Of said gross amount there was paid and credited as membership fees the sum of $33,368.50. And there was paid and credited as stock dues $18,-110.14.

15. From the sums received from the purchasers of shares as stated in the preceding findings

said Association, by and through its officers and directors, returned certain portions, to wit:

Returned membership fees in the amount of $2,794.02; returned stock dues in the amount of $4,035.26; from the balance of fees and dues received in the sum of $44,649.36, said Association loaned on first mortgage securities the sum of $14,450.00, and had cash on hand at the time of the appointment of the receiver herein on the 27th day of February, 1926, the sum of $521.48.

All of the residue of the receipts from membership fees and stock dues, and being the sum of $29,677.88, said Association, through its officers and directors paid to said Sommers and his sales organization and the incidental expenses of the sales campaign by virtue of and pursuant to the contract set out in the preceding finding No. 9.

16. The defendants herein while acting as directors of said Association were careless and negligent in the management and conduct of the operations thereof, in entering into said contract with said Sommers; in having acquiesced in the false and fraudulent representations made by Sommers and his sub-agents to the purchasers of stock as inducements for entering into their respective contracts, and the procuring of the moneys as hereinbefore stated; and in paying to said Sommers and his sales campaign expenses said large sums of money in face of agreements with the shareholders that amounts paid by them were to be received and handled as trust funds for their benefit.

17. The Association for which the plaintiff was appointed and is acting as receiver became insolvent by the misappropriation of the funds as hereinbefore stated and on account of which insolvency the corporation became unable to carry out the purpose for which it was created; and the shareholders of said Association were damaged by negligent misappropriation of said funds by the defendants in the said amount of $29,677.88. The plaintiff has been duly authorized, directed and empowered by the court to bring and prosecute this action for the benefit of the shareholders of said Association according to their respective interests.

18. That said defendants, and each of them, received no pecuniary benefit or profit from said

Association, drew no salaries of any kind whatsoever, derived no benefit from the said contract made with the said Harry J. Sommers, and in no way or manner participated in the earnings of said Harry J. Sommers as fiscal agent.

### CONCLUSIONS OF LAW.

Upon the foregoing facts the court concludes the law to be as follows:

1. That the contract entered into between the Association through the defendants as its officers and directors and H. J. Sommers as recited in the findings was ultra vires and void.

2. That the money paid to Sommers and his subordinate agents and to meet the expenses of the sales activities was a misappropriation of the trust funds.

3. That the plaintiff is entitled to recover from the defendants in the sum of $29,677.88.

Appellants reserved proper exceptions to each conclusion of law.

Appellants' motion for a new trial, which was overruled, contained thirty-eight separate reasons. The first was, "that the decision of the court is not sustained by sufficient evidence," and the third reason was, "that the decision of the court is contrary to law," and the fourteenth reason was, "that the amount of recovery was too large." The other reasons set out in their brief relate to the introduction or rejection of certain evidence.

Appellants assign as error the various rulings on their motions and demurrers and their exceptions to the conclusions of law, and the overruling of their motion for a new trial.

The question as to the sufficiency of the complaint to withstand the demurrer, the sufficiency of the findings to justify the conclusions of law, and the sufficiency of the evidence to sustain the findings are but a single question arising out of the different forms of procedure.

Appellee seeks to recover in this action on three separate grounds: First, because the contract with Simmors for the sale of the stock was ultra vires; second, because the defendants were negligent and careless in the conduct of the business of the association, and third, because the individual subscribing members to the association were induced to purchase stock in said association by the fraudulent representations of Sommers and his agents, with the knowledge, consent and acquiescence of the association.

Appellee contends that he should recover herein for the reason the facts show that the money herein sought to be recovered was a portion of the several amounts obtained from the several subscribers and became a trust fund in the hands of the association; that, because the insolvency and liquidating proceedings of the corporation abrogated all contractual obligations with the members thereof, they had the right to look to the receiver for repayment according to the equitable principles of money had and received; also the fact that the subscription contract, pursuant to which the various members made their contribution to the corporation, might be rescinded for fraud, would not compel them to pursue that remedy, but they had the right to hold the corporation according to the representations and promises of the agent, and in support of this theory cites the case of *Wayne International Bldg. & Loan Assn.* v. *Moats et al.* (1897), 149 Ind. 123, 48 N. E. 793. In that case the agent of the loan company agreed with one Perkins that if Perkins would waive the priority of the mortgage he held on the Moats land in favor of the Building & Loan Co., who proposed to make a loan on the same land, to enable Moats to erect some improvements thereon, it would see that all of said money was paid in payment of the construction of said building, and protect them from labor and material liens, and

the court sustained the lower court's conclusion that the agent of the loan company had the authority to make loans and to bind the company by such agreement. We agree with the law as stated in that case but are unable to see how it applies to the case at bar. If the subscribers were induced by fraud to contribute to the funds of this association, and after the discovery of the fraud they had elected to stand by their contract and insisted that the corporation fulfill its agreement, as made by its agents, the corporation may have been bound thereby. But regardless of the outcome of such a controversy between the subscribers and the association it is not decisive of the question in this case. The decisive question in this case, as presented in its different forms by the various assignments of error, is: Does the receiver have the right to maintain this action? The facts in the case at bar show that the money, which appellee is seeking to recover in this action, was obtained, in the first instance, from the subscribers, by fraud perpetrated upon them by Sommers with the knowledge and consent of the association. If the averments of the complaint are to be taken as true, and the facts as fully and correctly found by the court, they clearly show that both Sommers and the association were parties to the fraud practiced upon the subscribers. If the subscribers were induced through fraud to sign the subscription contract, certainly they would have the right to repudiate such a contract and sue the association to recover back the money they paid under such void subscription agreement. *Marion Trust Co., Receiver* v. *Blish* (1908), 170 Ind. 686, 84 N. E. 814, 85 N. E. 344, 18 L. R. A. (N. S.) 347, and cases there cited. But what right does the receiver have to recover the money which, by the averments in his complaint and the facts established by his own witnesses, he shows to belong to some one else? What would the receiver do with it, if he should recover

the money? It could not be used rightfully to pay general creditors, for it belongs to the defrauded subscribers. If he be permitted to use it as a part of the legitimate assets of the company, then some of the creditors would be benefited by the fraud to which the association was a party. The appellee answers that the receiver hold the money in trust for the subscribing members who were defrauded in the purchase of their stock. If this be true, can an action such as the present one be maintained? Can the receiver, as such, successfully maintain an action to recover a portion of the funds, unlawfully paid out by the officers, that were obtained by the corporation through fraud. We are convinced the receiver has no such right. *Houston* v. *Thornton* (1898), 122 N. C. 365, 29 S. E. 827, 65 Am. St. Rep. 699; *Price et al.* v. *Union Land Co.* (1911), 187 Fed. 886.

If the money herein sought to be recovered rightfully belonged to the association and had the present suit been brought by the receiver to recover such funds on the theory that such funds properly constituted a part of the assets of the association and that it had been wrongfully and unlawfully paid out and lost to the association through the gross negligence of the board of directors, we would have an entirely different case, and one which would then fall within the rule of *Coddington* v. *Canady* (1901), 157 Ind. 243, 62 N. E. 567, cited and relied upon by appellee. But such, as stated above, is not the theory upon which appellee seeks to recover in this action.

In the Price case, *supra,* the court said:

"But running through the bill is an attempted assertion of a cause of action against the individual defendants not for the use and benefit of the fuel company but exclusively affecting the complainants as individuals. It is for fraud and deceit practiced upon them in the original sale and purchase of the stock which they hold. Clearly such a cause of ac-

tion has no place in a stockholder's suit brought for the benefit of the corporation. A right to maintain a suit against the officers of a corporation for fraudulent misappropriation of its property is a right of the corporation. . . . A right of a stockholder to sue for fraud and deceit practiced upon him when he purchased his stock is a personal one."

In *Vogt* v. *Vogt* (1907), 119 App. Div. 518, 104 N. Y. S. 164, the court, in discussing the question as to whether the right of action belonged to the corporation on account of fraud in securing its dissolution, said: "The contention that if there be any such cause of action it belongs to the company is also groundless. The wrong complained of is a particular wrong to the plaintiff." The fact, if it be a fact, that the appellee Sommers obtained the money herein sought to be recovered, unlawfully, and by reason of an unlawful and ultra vires contract, or by reason of the negligence of the board of directors of the association, it by no means follows that the receiver of the association has the right to recover in this action. The receiver represents the corporate existence as far as determining the nature and extent of his title to the cause of action is concerned. *Voorhees* v. *Indianapolis Car Co. et al.* (1895), 140 Ind. 220, 39 N. E. 738; High, Rec. §315.

The corporation, if solvent, would be in no position to assert a claim to the funds in question, for under the facts in this case, they were a party to the fraud which resulted in placing the money in the hands of the association in the first instance. The receiver is in no better position than the association would have been, had it remained solvent. The receiver, by this action, is placed in the position of asserting fraud, and at the same time seeking to obtain the fruits thereof. If Sommers and his sub-agents obtained the subscriptions by fraud, with the knowledge and consent of the board of directors of the association, and the

association with such knowledge makes claim to the proceeds thereof, it thereby ratifies the acts of its agents, and becomes a party to the fraud.

As stated before, appellee receiver seeks to justify this action on the theory that the association held this money in trust for the defrauded subscribers, and therefore they have the right to look to him, as the receiver of the association, for the return thereof, on the ground of money had and received. This position is not sound. After all, the receiver, in fact, would be acting for a group of persons who have separate actions for fraud. There are many reasons why he cannot do this. In the first place, he would have to prove that each and all of the stockholders were in fact defrauded, which fact was by no means supported by the evidence in this case. Only a small portion of the stockholders testified in the case, and no attempt whatever was made to show what representations were made by the salesmen to the other subscribers. Should the receiver recover in this action, how could he know to whom it rightfully belonged, or in what amount, except each claimant make proof thereof in a suit against him instituted for that purpose. An action for fraud is a personal action, and there were as many wrongs as there were persons wronged, and where they were dealt with separately, and acted separately, they could no more unite their claims in one action than they could assault and batteries committed upon each one of them. *Powell* v. *Dayton, etc., R. R. Co.* (1886), 13 Ore. 446, 11 Pac. 222. Suppose appellants had not appealed from the judgment below, but had elected to abide and pay the same, and soon thereafter some one or all of the defrauded stockholders had instituted their action or actions against Sommers and the appellants herein to recover the money paid by them on the ground of fraud in the sale of the stock. What would be their answer

to such complaint? Could they plead the judgment in this action as being *res judicata,* and would such a judgment be a bar to such action? We think not. They are not made parties to this action, and they would certainly not be bound by the judgment in an action to which they were in nowise connected.

We are convinced the receiver herein has no right to maintain this action, and that the court erred in its conclusions of law. In view of the conclusion we have reached it becomes immaterial whether the contract with Sommers was ultra vires or not, or whether the money was unlawfully paid out by the board of directors.

Judgment reversed with instructions to the lower court to restate its conclusions of law in conformity with this opinion. So ordered.