UNDERWRITING MEMBERS OF LLOYDS OF LONDON, Lucy Jane Barker (Representative Underwriter) and Bruce Donald Shepherd (Representative Underwriter), Appellants,

v.

UNITED HOME LIFE INSURANCE COMPANY,

and

Brougher Agency, Inc., Appellees.

No. 41A01–8906–CV–217.

Court of Appeals of Indiana, First District.

Jan. 29, 1990.

C. Dickson Faires, Jr., Miller, Faires, Hebert, Woddell & Baker, Indianapolis, R.M. Gholston, Franklin, for appellants.

John S. Beeman, Michael V. Gooch, Harrison & Moberly, Edward O. DeLaney, Howard E. Kochell, Barnes & Thornburg, Indianapolis, Tom G. Jones, Jones, Loveall & Johnson, Franklin, for appellees.

BAKER, Judge.

## STATEMENT OF THE CASE

Defendant-appellants, Underwriting Members of Lloyds of London, Lucy Jane Barker and Bruce Donald Shepherd (hereinafter collectively referred to as Lloyds), bring this interlocutory appeal from the denial of its request for arbitration.

## STATEMENT OF THE FACTS

Lloyds and plaintiff-appellee, United Home Life Insurance Company (UHL), entered into three separate reinsurance agreements (the agreements). Pursuant to the agreements, Lloyds was to reinsure UHL for a portion of UHL's responsibility under life insurance policies issued to its insureds. UHL's insurance policies provided that those insureds who became disabled but did not die were eligible for premium waiver status whereby the insured was excused from premium payments while UHL retained future liability upon the insured's death. UHL negotiated the agreements with defendant, Brougher Agency, Inc. (Brougher) who was acting as an intermediary between Lloyds and UHL.[1]

The reinsurance agreements each covered a one-year period for the years 1981, 1982, and 1983. The agreements contained identical provisions including Article 15 regarding arbitration. The parties agreed that upon the written request of either party, any dispute arising between the parties with respect "to the interpretation of this Agreement or their rights with respect to any transaction involved" would be submitted to arbitration. *Record* at 15. In Article 16 of the agreements, the parties further agreed that "[i]n the event of the failure [of] the Reinsurers [Lloyds] hereon to pay any amount claimed to be due hereunder, the Reinsurers hereon, at the request of the Reassured [UHL], will submit to the jurisdiction of any court of competent jurisdiction...." *Record* at 26.

UHL submitted claims to Lloyds for coverage of certain death benefits paid to its insureds under life insurance policies issued by UHL. Lloyds refused to honor the claims because it believed it was liable only for the insureds who died during the period the agreements were in effect. UHL, however, believed it was entitled to coverage for all of its insureds who reached premium waiver status during the effective periods of the agreements regardless of when they died.

UHL filed a complaint seeking declaratory judgment, monetary damages and punitive damages. Lloyds responded by making a written request for arbitration of the dispute. UHL thereafter filed a motion to stay Lloyds' request for arbitration to which Lloyds responded with a cross-motion to stay litigation pending arbitration. The trial court granted UHL's motion to stay arbitration and denied Lloyds' motion to stay litigation.

In granting UHL's motion to stay arbitration, the trial court found that Count I of UHL's complaint seeking declaratory judgment requested interpretation of Lloyds' responsibilities to UHL. According to the trial court, such interpretation was governed by Article 15 of the agreements addressing arbitration. The trial court further found that the claim for monetary damages was for amounts claimed to be due and was, therefore, subject to Article 16 of the agreements addressing service of suit. Furthermore, the trial court found that the fraud claim in the punitive damages count of the complaint was subject to neither Article 15 nor Article 16. The trial court also determined that since Brougher was not a party to the agreements, it was not entitled to participate in arbitration. Accordingly, any claims by UHL against Brougher were subject to litigation. The trial court finally determined that although an arbitration agreement existed between the parties, the declaratory judgment count was so intertwined with the monetary dam-

---

1. Brougher is not an active participant in this appeal.

ages count which, like the majority of issues, was not subject to arbitration. For this reason, and because the rights of other defendants not subject to arbitration needed to be determined, the court denied Lloyds' request for arbitration. Lloyds appeals.

## ISSUES

The sole ·issue raised for our review is whether the trial court erred in denying Lloyds' motion to stay litigation pending arbitration.

## DISCUSSION AND DECISION

The determination of the arbitrability of a particular dispute is a matter of contract interpretation. 6 C.J.S. *Arbitration* § 25 (1975). Generally, construction of a written contract is a question of law. *Kordick v. Merchants Nat'l Bank and Trust Co.* (1986), Ind.App., 496 N.E.2d 119. Where no defect is claimed to have occurred during the contract's formation, its terms, if unambiguous, are conclusive on the question of the intentions of the parties. *Piskorowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d 838, *trans. denied.* In determining whether a contract's terms are ambiguous, words must be given their usual and common meaning unless, from the entire contract and its subject matter, it is clear some other meaning was intended. *Id.* Words, phrases, sentences, and paragraphs of a contract cannot be read alone. Rather, the intention of the parties must be gathered from the entire contract. *Teitge v. Remy Construction Co.* (1988), Ind. App., 526 N.E.2d 1008.

■ There was no allegation before the trial court or before this court that there was a defect in the formation of the contract or that the terms of the contract are ambiguous. Rather, Lloyds claims the trial court erred in determining Count II was not subject to arbitration. Lloyds argues that Counts I and II of UHL's complaint involve the same issue of whether Lloyds is responsible for the insureds who reached premium waiver status but did not die during the effective periods of the agreements. Because this issue revolves around an in-terpretation of the agreements, Lloyds argues, both counts are subject ·to arbitration. We agree.

In addressing the relationship between Counts I and II of UHL's complaint, the trial court made the following finding:

The prayer for relief in Count I, page 6, requests interpretation of the responsibilities of Lloyds which infers Article 15 is the appropriate vehicle for resolution of that area of dispute. However, the request for a declaratory Judgment in Count I is so intertwined with the prayer in Count II as to be a part thereof and, consequently, subject to the provisions of Article 16. Also, resolution of Count II will resolve Count I.

*Record* at 149. Contrary to the trial court's determination, the relatedness of Counts I and II favors rather than discourages arbitration.

In its complaint, UHL included inter alia the following request in its prayer for relief in Count I: "That the Court enter a Declaratory Judgment *construing the provisions of the Agreements* ... and determine the rights and liabilities of the parties under said Agreements." *Record* at 7 (emphasis added). Further, in Count II of its complaint, UHL alleged inter alia that: "UHL submitted to Lloyds, through its authorized representative and agent, Brougher, a listing of the Group Insurance claimants who went on waiver of premium disability in 1982 and 1983 as losses *which were covered under the Agreements.*" *Record* at 7–8 (emphasis added). The emphasized language in both counts reveals that UHL sought to obtain an interpretation of the agreements which would include a determination of which of its insureds were covered under the agreements. Counts I and II each involve a dispute between the parties regarding an interpretation of the agreements. Accordingly, they are both subject to arbitration under Article 15 of the agreements. The trial court erred in concluding otherwise.

■ We recognize that the punitive damages claim contained in Count III of UHL's complaint is not subject to arbitra-

tion proceedings. *United States Fidelity & Guar. Co. v. DeFluiter* (1984), Ind.App., 456 N.E.2d 429, *trans. denied.* Arbitration arises out of a contractual relationship; therefore, punitive damages are improper because parties may not contract to benefit from or to be penalized by punitive damages. *Id.* The availability of punitive damages in arbitration proceedings, however, does not render the entire dispute nonarbitrable.

Indiana's Uniform Arbitration Act provides guidance for determining when to order arbitration. IND. CODE 34–4–2–1 to 22. Specifically, IND. CODE 34–4–2–3(f) provides as follows:

> If the court determines that there are other issues between the parties which are not subject to arbitration and which are the subject of a pending action or special proceeding between the parties and that a determination of such issues is likely to make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies.

This provision codifies what has been more commonly referred to as the "permeation doctrine." Indiana has not yet discussed the doctrine of permeation, and we, therefore, look to other courts for assistance.

The substance of the permeation doctrine was articulated by the seventh federal circuit as follows:

> The "permeation" doctrine, whereby a district court may stay an action to compel arbitration if nonarbitrable issues are so inseparable from the subject matter of the arbitration that the arbitrators would find it difficult to do their job without making findings that would have collateral estoppel effect in the trial of the nonarbitrable issues.

*University Life Ins. Co. of America v. Unimarc Ltd.* (7th Cir.1983), 699 F.2d 846, 850. In *University Life, supra,* the president of Unimarc, a California company, demanded arbitration under a coinsurance agreement it entered with University Life, an Indiana company. Once the arbitrators were appointed, however, Unimarc's president refused to submit his claims to arbitration. Unimarc and its president subsequently filed a diversity action in federal court in California alleging University Life had engaged in antitrust violations. University Life moved to stay the California action pending arbitration and thereafter filed a petition in federal district court in Indiana to compel arbitration. In affirming the Indiana district court's decision to compel arbitration, the seventh circuit held that the antitrust issues raised by Unimarc's complaint were insubstantial and thus provided no basis for refusing to order arbitration. In so holding, the seventh circuit noted that ordering arbitration should not be precluded by collateral estoppel considerations because: "Better to compel arbitration and let the district court in California worry, after arbitration is completed and the lawsuit in that court resumes, how much weight to give the arbitrators' findings of fact in deciding the antitrust issues." *Id.* at 851. The same is true in the case before us. Given that Counts I and II are arbitrable, it is better to compel arbitration on those issues and, if UHL is successful, leave it up to the trial court to determine how much weight to give the arbitrators' findings in deciding the punitive damages issue and whether Brougher is responsible to UHL.

Furthermore, to be successful on its punitive damages claim, UHL must prove the existence of a separate tort outside the breach of contract it alleges Lloyds committed. *Kruszewski v. Kwasneski* (1989), Ind.App., 539 N.E.2d 965. Any punitive damages awarded would be in addition to any compensatory damages awarded on the breach of contract claim. *Id.* Because the punitive damages· claim involves separate proof and is a separate damage award, it is not so inseparable from the subject matter of Counts I and II as to hinder the effectiveness of arbitration. In addition, Brougher is not a party to the agreements and any responsibility it owes to UHL can be determined separately from the interpretation of the agreements.

Contrary to the assertions of the trial court and UHL, judicial economy will be

served by arbitration. The crux of the dispute between UHL and Lloyds involves an interpretation of the agreements to determine which of UHL's insureds are covered under the agreements. The dispute can be settled largely through a determination of Counts I and II. If UHL is unsuccessful in arbitration, judicial action becomes unnecessary. If UHL prevails in arbitration, the main issue will already have been determined and the trial court will be relieved of the burden of interpreting the agreements.

In arguing to avoid arbitration, UHL asserts that because it is *claiming* amounts are due, the dispute is governed by Article 16 of the agreements which contains the phrase "amount *claimed* to be due." *Record* at 16. While it is true Article 16 contains the phrase pointed out by UHL, the article is entitled "service of suit" and addresses service of process and jurisdiction. The mere fact that it contains the word "claimed" does not preclude arbitration of a "claim" arising out of an interpretation of the agreements. This court will not read words and phrases of a contract alone. *Teitge, supra.* When reading the contract as a whole, it is clear that disputes involving an interpretation of the agreements were intended by the parties to be arbitrated.

UHL argues that Lloyds waived its right to arbitrate by participating in the litigation. Specifically, UHL contends that because Lloyds participated in a deposition, responded to UHL's discovery demands and filed an answer and counterclaim, it waived its right to arbitrate. We disagree. The deposition in question was taken at UHL's request to perpetuate testimony pursuant to Ind. Trial Rule 27. The deponent was gravely ill and was not expected to live much longer. Under such circumstances, participation in the deposition did not result in waiver of Lloyds' right to arbitrate. Furthermore, Lloyds filed pleadings and complied with discovery only when faced with a court order to do so. Lloyds asserted its right to arbitrate throughout the proceedings. Lloyds did not waive its right to arbitrate.

As a final matter, Lloyds claims it is entitled to costs it incurred in obtaining arbitration. Such a determination is best left to the arbitrator who may determine whether, pursuant to the agreements, Lloyds is entitled to such costs. Lloyds may not complain to this court of UHL's failure to submit to arbitration and then attempt to sever its own claim from the arbitration process.

The trial court is reversed and the cause is remanded with instructions to order arbitration.

ROBERTSON and CONOVER, JJ., concur.