ISP.COM LLC and ISP.net LLC, Appellants–Defendants,

v.

David J. THEISING, Receiver of IQuest Internet, Inc., Appellee–Plaintiff.

No. 29A02–0207–CV–610.

Court of Appeals of Indiana.

Feb. 28, 2003.

Rehearing Denied April 9, 2003.

Jeffrey R. Gaither, T. Joseph Wendt, Leagre Chandler & Millard, Indianapolis, IN, Attorneys for Appellants.

John C. Hoard, R. Brock Jordan, Rubin & Levin, David J. Theising, Christopher & Taylor, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellants-defendants ISP.com LLC and ISP.net LLC (ISP) appeal the trial court's denial of their motion to stay proceedings and compel arbitration against David J. Theising, receiver of IQuest Internet, Inc. (IQuest). Specifically, ISP argues that the trial court erred in refusing to compel arbitration because the contracts that are the subject of litigation in this case evidence the parties' intent to arbitrate disputes. ISP also claims that even if the receiver's fraudulent transfer and estoppel claims are not subject to arbitration, this court should stay the receiver's claims until its claims in a separate action are arbitrated. Because we find that the trial court committed no error and that ISP did not request alternative relief from the trial court, we affirm.

### FACTS

The facts most favorable to the judgment reveal that ISP and IQuest entered into an Asset Purchase Agreement for ISP to acquire IQuest's assets for $23 million. As part of this arrangement, ISP was to pay $12 million to Robert P. Hoquim, IQuest's founder, and grant ownership credits to two former IQuest officers in the amounts of $2 million and $1 million, respectively.

ISP and Hoquim executed a separate Loan Agreement and secured Note, with ISP as the debtor and Hoquim as the secured party. The Note had a principal amount of $10 million, as ISP paid Hoquim the remaining $2 million in cash. The Loan Agreement also allowed ISP to set off amounts owed under the note in case of an "indemnity obligation." The loan agreement defined "indemnity obligation" as "a claim for indemnification that has been finally determined in accordance with Article VIII of the Asset Purchase Agreement." Appellants' App. p. 99. Furthermore, Article VIII—by reference to Section 9.16 of the Asset Purchase Agreement—required the parties to submit to binding arbitration with respect to indemnity disputes. Appellants' App. p. 56, 60. Thus, the Loan Agreement allowed ISP to retroactively adjust the purchase price of IQuest's assets by setting off against the Note's principal any damages sustained on account of Hoquim's or IQuest's breaches of warranty or contract.

Due to a separate receivership action brought by IQuest's creditors in Hamilton Superior Court, Theising was appointed receiver on December 15, 2000. On January 16, 2001, Hoquim's estate assigned the Note to Theising, as receiver of IQuest.[1]

At some point before Theising filed the current complaint, ISP filed its own complaint in Marion Superior Court to enforce an arbitration award. Though the record is incomplete in this regard, ISP apparently contended that IQuest misrepresented the number of subscribers using IQuest's internet services. Appellants' Br. p. 6 n. 2. ISP contended that IQuest's misrepresentation caused it to overpay for IQuest's assets and demanded an $8 million price adjustment, as contemplated by Article VIII of the Asset Purchase Agreement. Because of this alleged price adjustment and the pending action in Marion Superior Court, ISP ceased making payments on the Hoquim Note. Appellants' Br. p. 6.

On February 15, 2002, Theising filed his complaint in Hamilton Superior Court al-

---

1. Hoquim—a thirteen-year fugitive wanted by the Federal Bureau of Investigation whose real name was John Paul Aleshe—was deceased at this point. WISH–TV, *Secret Identi-ty* (June 8, 2000), *at* http://www.wishtv.com/Global/story.asp?s=84881 (last visited January 28, 2003).

leging fraudulent transfers on the part of ISP. Theising claimed that the $23 million paid by ISP for IQuest was insufficient because it left IQuest with insufficient funds to pay its debts. Theising claimed the shortfall was due to self-dealing between Hoquim and IQuest. On June 10, 2002, ISP filed its motion to stay proceedings and compel arbitration, claiming that the arbitration clause of the Asset Purchase Agreement required that Theising's fraudulent transfer claims be submitted to arbitration.

In his complaint, Theising had also asked the trial court to estop ISP from seeking a set off to reduce the amount of the Note. Appellants' App. p. 28. Theising alleged that because IQuest insiders who now owned ISP had engaged in self-dealing, it would be unjust to allow ISP to seek a reduction in the principal of the Note. Appellants' App. p. 29. As part of its June 10, 2002 motion ISP argued that the issue of estoppel should be submitted to arbitration as well.

A hearing on ISP's motion was held on July 9, 2002. On July 10, 2002, the trial court denied ISP's motion. ISP now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

 We first note that the disagreements between ISP and Theising relate to which disputes, if any, are to be arbitrated. Whether a particular claim must be arbitrated per an agreement is a matter of contract interpretation. *Underwriting Members of Lloyds of London v. United Home Life Ins. Co.*, 549 N.E.2d 67, 69 (Ind.Ct.App.1990). Interpretation of contracts is a question of law. *Id.* When interpreting a contract, a "court should attempt to determine the intent of the parties at the time the contract was made

by examining the language used to express their rights and duties." *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 290 (Ind.Ct.App.2001). "In determining whether a contract's terms are ambiguous, words must be given their usual and common meaning unless, from the entire contract and its subject matter, it is clear some other meaning was intended." *United Home Life Ins. Co.*, 549 N.E.2d at 69.

### II. Fraudulent Transfer Claims

ISP claims that Article VIII of the Asset Purchase Agreement—by reference to Section 9.16 of the same document—requires the parties to submit to binding arbitration. Appellants' Br. p. 11. Thus, ISP seeks to enforce the arbitration provision within the Asset Purchase Agreement against Theising.

### A. Receiver's Role

 We first note that a receiver, such as Theising, acts in a multiple capacity. *Voorhees v. Indianapolis Car & Mfg. Co.*, 140 Ind. 220, 239, 39 N.E. 738, 744 (1895). A receiver represents the corporation itself and is also "to be regarded as a trustee for both creditors and shareholders." *Id.* The general rule is that during litigation, a receiver "takes only the rights of the corporation, such as could be asserted in its own name." *Id.* However, an exception to the rule exists when "acts have been done in fraud on the rights of [creditors or shareholders], but which are valid against the corporation itself, in which case he holds adversely to the corporation." *Id.* In sum, Theising may act in a capacity to represent the injured creditors if those creditors are charging that fraud has occurred.

In Theising's complaint, Counts I through IV allege fraudulent conveyances from IQuest to corporate insiders. Appellants' App. pp. 15–21. Each count alleges that IQuest was "stripped of assets avail-

able for payment of its debts." Appellants' App. p. 16, 17, 18, 20. Thus, Theising is alleging fraud.

Theising's complaint also states that he "represents the interests of [IQuest] and its creditors." Appellants' App. p. 15. Thus, Theising claims to be securing the rights of IQuest's creditors. Because Theising represents IQuest's creditors and is alleging fraud, he represents the creditors in an action and "holds adversely to the corporation" in prosecuting a case for fraudulent transfer. *Id.*

### B. Arbitration Agreement Does Not Bind Creditors

■■■ An arbitration agreement, like any other contract, only binds parties to the agreement or those in privity with a party. *Mislenkov,* 743 N.E.2d at 289. Privity is found if a non-party holds "a mutual or successive relationship with [a party] with regard to property or that their interests are so identical as to represent the same legal right." *Id.*

It is undisputed that IQuest's creditors are not a party to the Asset Purchase Agreement, as the agreement states that the only parties to the agreement were ISP, IQuest, and Hoquim. Appellants' App. p. 36.

With regards to privity, a recent case involving a receivership and an arbitration clause held that creditors are not in privity with a party to an arbitration agreement and thus not bound to arbitrate a claim. *Capitol Life Ins. Co. v. Gallagher,* 839 F.Supp. 767, 768 (D.Colo.1993). The plaintiff—Capitol Life Insurance—entered into a reinsurance contract with Guarantee Security Life Insurance Company (GSL) that contained an arbitration clause. GSL was later declared insolvent and Gallagher appointed receiver. On behalf of GSL's policyholders, Gallagher filed suit against Capitol for fraud. Capitol sought to enforce the arbitration clause, arguing that Galla-

gher "[stood] in the shoes of GSL" and was thus bound by the clause. *Id.* at 769. The district court found that Gallagher, as receiver, had the ability to sue in more than one capacity. *Id.* When suing on behalf of GSL policyholders, Gallagher was representing persons who were not parties to the arbitration provision. *Id.* at 770. Thus, the policyholders were not bound by the arbitration clause. *Id.*

■■ Here, as in *Gallagher,* a receiver is suing on behalf of non-parties to the contract that includes an arbitration clause. Theising, though a representative of IQuest, is acting to protect injured creditors. In such a capacity, he is not bound by the arbitration clause contained in the Asset Purchase Agreement. Thus, the trial court did not err by refusing to stay the proceedings and order arbitration.

### III. Estoppel Claim

ISP contends that the trial court erred in holding that Theising's claim of estoppel does not require arbitration. Specifically, ISP points out that the Loan Agreement itself defines an "indemnity obligation" as "a claim for indemnification that has been finally determined in accordance with Article VIII of the Asset Purchase Agreement." Appellants' Br. p. 14. Thus, ISP claims that a dispute regarding the amount of the Note must be settled through procedures detailed in Article VIII of the Asset Purchase Agreement, namely arbitration.

■■ Theising, on the other hand, maintains that the Loan Agreement's mention of an "indemnity obligation" only creates a mechanism to alter the principal of the Note if a dispute occurs *pursuant to the Asset Purchase Agreement.* With regard to disputes regarding the actual *creation and interpretation* of the Note and Loan Agreement—such as issues of fraud or self-dealing—Theising argues, a judicial fo-

rum was contemplated by the parties, as shown by the Loan Agreement itself. Appellee's Br. p. 27. In resolving this issue, we note that when interpreting a contract, we attempt to effect the intent of the parties at the time the contract was made by looking to the language they used in establishing their rights and remedies. *Mislenkov,* 743 N.E.2d at 290.

■ Here, the Loan Agreement does refer back to the Asset Purchase Agreement when defining an "indemnity obligation." However, Section 6.2 of the Loan Agreement, "Remedies," does not mention arbitration. Appellants' App. p. 108. Moreover, the Loan Agreement's Section 7.7 states that the parties "irrevocably consent to the jurisdiction and venue of the courts of Marion County in the State of Indiana … with respect to any and all actions related to this Agreement or the Note." Appellants' App. p. 110. Finally, the Loan Agreement's Section 7.6 provides that the Loan Agreement and Note "constitute the complete agreement of the parties hereto and supersede all previous understandings relating to the subject matter hereof." Appellants' App. p. 109.

From these provisions, it appears that the parties contemplated a judicial resolution for disputes regarding the Note and arbitration for disputes arising from the Asset Purchase Agreement. Most noticeably, the Loan Agreement's "Remedies" section does not even mention arbitration. Because the terms of the Loan Agreement specifically address remedies with respect to the Note, we find that the Loan Agreement's provision provides for a judicial forum and not arbitration. Thus, the trial court did not err by refusing to order arbitration of Theising's estoppel claim.

### IV. Alternative Relief

■ ISP asks us to stay Theising's fraudulent transfer claims in the event that this court upholds the trial court's judgment. We note that ISP did not request such relief from the trial court. "On appeal, a party may not request relief for which [it] made no claim in the trial court." *Tomahawk Village Apartments v. Farren,* 571 N.E.2d 1286, 1294 (Ind.Ct.App.1991). As such, ISP waived its right to request alternative relief.

### CONCLUSION

In light of our disposition of the issues set forth above, we conclude that neither Theising's fraudulent transfer claims nor his estoppel claim are subject to arbitration. Thus, the trial court did not err in denying ISP's motion to stay the proceedings and order arbitration.

Affirmed.

RILEY and MATHIAS, JJ., concur.