**Lenoard CHESTER, Plaintiff,**

v.

**Gregory PURVIS, Defendant.**

**No. IP 01–1560–CBS.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 26, 2003.

Brandi A. Haggard, Southward & Haggard, Clifford W. Shepard, Attorney at Law, Indianapolis, IN, for Plaintiff.

Todd J. Kaiser, Ogletree, Deakins, Nash, Smoak & Stewart, PC, Indianapolis, IN, for Defendant.

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARKER, District Judge.

### I. *Introduction*

This is an action against an attorney for allegedly misusing a credit report during the deposition of the plaintiff. This case is collateral to a putative class action, *Hill v. Priority Financial Services, Inc.,* IP98–1319–C B/S, a Fair Debt Collection Practices Act case. The plaintiff here was (until he withdrew) a named representative of the class, and the defendant, attorney Gregory Purvis, was counsel for Priority Financial Services, Inc. (hereafter PFS). Mr. Chester's complaint alleges that, during the course of discovery in *Hill v. PFS,* Mr. Purvis deposed Mr. Chester. During the deposition, Mr. Purvis allegedly used a credit report involving Mr. Chester's credit history to form questions to Mr. Chester. Mr. Chester alleges that Mr. Purvis' use of the credit report violated Mr. Chester's statutorily protected confidentiality pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681(b)(a) and (f).

Mr. Purvis seeks summary judgment as to Mr. Chester's claim. Mr. Chester, in turn, asks us to construe his written submissions as both an opposition to Mr. Purvis' motion and as a cross-motion for summary judgment. For the reasons explained below, we *DENY* Mr. Purvis' motion for summary judgment. In addition, we note that we are prepared to enter summary judgment in favor of Mr. Chester on the record as it stands. Before entering summary judgment in favor of Mr. Chester, we offer Mr. Purvis an opportunity to respond and thus order Mr. Purvis to file a response, if he wishes, to Mr. Chester's motion for summary judgment within thirty days after the date of this order.

### II. *Statement of Facts*

The material facts are uncontested. Mr. Chester was named as a representative of a putative class of plaintiffs in *Hill v. PFS.* Mr. Purvis represented PFS in that lawsuit. During discovery, Mr. Purvis took Mr. Chester's deposition. Mr. Purvis testified that among the purposes for depos-

ing Mr. Chester was to test his adequacy as a class representative, to test his potential effectiveness as a witness, to test his memory, and to determine his ability to pay certain costs, or, as Mr. Purvis testified, to test Mr. Chester's "financial condition generally." Purvis Dep., p. 68. In the course of deposing Mr. Chester, Mr. Purvis asked some questions concerning Mr. Chester's status as a debtor. Mr. Chester displayed an apparent lapse of memory with respect to collection actions that may have been filed against him.

Ms. Rebecca Pollard, PFS's Vice President, attended Mr. Chester's deposition as a company representative. In response to Mr. Chester's apparent failure of memory with respect to his credit record, Ms. Pollard showed Mr. Chester's credit report to Mr. Purvis; she "pointed out different items" on the report to Mr. Purvis. Purvis Dep., pp. 74–75. Mr. Purvis acknowledges that, during the deposition, he may have held the credit report in his own hands. Purvis Dep., p. 85. He also acknowledges that questions which he posed to Mr. Chester about Mr. Chester's credit history may have been based solely on the credit report supplied by Ms. Pollard because there may not have been a public record on which to base those questions. Purvis Dep., pp. 76–80, 85.

In sum, Mr. Purvis acknowledges that he used some of the information he gathered from Mr. Chester's credit report to formulate questions during Mr. Chester's deposition. During Mr. Purvis' deposition in the current action, he was asked the following questions and answered as follows:

Q: Is this an accurate statement, that you read the, or you read part of or some parts of Mr. Chester's consumer report on November 9th of '99?

A: Yes.

Q: You used some of the information that you obtained from reading this con-

sumer report to aid you in formulating certain questions of Mr. Chester?

A: Yes.

Purvis Dep., pp. 98–99.

### III. *Discussion*

#### A. *The Standard on Summary Judgment*

We are asked to decide what are essentially cross motions for summary judgment. In doing so, we may grant one party summary judgment (as to all or a part) or deny both parties' motions. In any event, the standard for determining summary judgment is the same, even where only one party has moved for it.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eiland v. Trinity Hosp.,* 150 F.3d 747, 750 (7th Cir.1998).

On a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322–23, 477 U.S. 317, 106 S.Ct. 2548, 91

L.Ed.2d 265. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex*, 477 U.S. at 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Anderson*, 477 U.S. at 249–52, 106 S.Ct. 2505, 91 L.Ed.2d 202).

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge*, 24 F.3d at 920. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the non-movant. *Venters v. City of Delphi*, 123 F.3d 956, 962 (7th Cir.1997). If genuine doubts remain, and a reasonable factfinder could find for the party opposing the motion, summary judgment is inappropriate. See *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. See *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Waldridge*, 24 F.3d at 920.

### B. *Mr. Chester's Claim*

This case is uniquely susceptible to summary judgment in that the material and essential facts are uncontested making the issues before us pure matters of law. There is no dispute as to the fact that Mr. Purvis used Mr. Chester's credit report during his deposition. The issue, therefore, is whether this use was protected or otherwise non-actionable. Either Mr. Purvis had a right to use Mr. Chester's credit report while deposing Mr. Chester, or he did not. If he did not, then he violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681(b)(a) and (f).

The statute governing "permissible purposes of consumer reports," 15 U.S.C. § 1681b, provides in pertinent part:

(a) In general. Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury.

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

\* \* \* \* \* \*

(F) otherwise has a legitimate business need for the information—

(i) in connection with a business transaction that is initiated by the consumer; or

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

(4) In response to a request by the head of a State or local child support enforcement agency (or a State or local government official authorized by the head of such an agency), if the person making the request certifies to the consumer reporting agency that—

(A) the consumer report is needed for the purpose of establishing an individual's capacity to make child support payments or determining the appropriate level of such payments;

(B) the paternity of the consumer for the child to which the obligation relates has been established or acknowledged by the consumer in accordance with State laws under which the obligation arises (*if required by those laws*);

(C) the person has provided at least 10 days' prior notice to the consumer whose report is requested, by certified or registered mail to the last known address of the consumer, that the report will be requested; and

(D) the consumer report will be kept confidential, will be used solely for a purpose described in subparagraph (A), and will not be used in connection with any other civil, administrative, or criminal proceeding, or for any other purpose.

(5) To an agency administering a State plan under section 654 of Title 42 for use to set an initial or modified child support award.

 The crucial words are "and no other" in the opening phrase: "Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances *and no other.*" (Emphasis added.) We must interpret a statute in terms of its plain meaning. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 1024, 127 L.Ed.2d 455, (1994) (Thomas, J., concurring). "In ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *McCarthy v. Bronson,* 500 U.S. 136, 139, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991).

 It follows that, when a statute provides a list of circumstances under which it applies and informs us that the list is exhaustive—"and no other"—we have no basis for modifying it by addition or subtraction.[1] It is true that in seeking to determine the plain meaning of a statute "we look not only to the particular statutory language but to the design of the statute as a whole and to its object and policy." *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990); *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988)("[i]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.") Here, placing the provisions in their context confirms our conclusion that the terms are exhaustive, because the context emphasizes confidentiality. The limitations of the provision operate to support the confidentiality of consumer reports by limiting their dissemination. Thus, section 1681(a)(4) provides that: "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and *a respect for the consumer's right to privacy.*" [Emphasis added.] And section 1681(b) provides: "It is the purpose of this subchapter to require that consumer reporting agencies

---

**1.** Construing the statute as a whole, moreover, leads us to conclude that it governs not merely *obtaining* a consumer credit report, but *using* one as well. Section 1681b(f) adds: "A person shall not *use or obtain* a consumer report for any purpose unless—

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification. [Emphasis added.]"

adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information *in a manner which is fair and equitable to the consumer, with regard to the confidentiality,* accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." [Emphasis added.]

■ It appears plain on the face of these statutory provisions that an individual may neither obtain nor use a consumer credit report for any purposes unrelated to the list of enumerated purposes; in general, these purposes relate to collecting debts or determining whether a person is credit worthy for purposes of extending a loan or making child support payments. If this reading is correct, then Mr. Purvis appears to have violated the statute both in obtaining Mr. Chester's consumer report and in using it during his deposition. The statute provides for civil liability in such instances. 15 U.S.C.A. §§ 1681n–1681p. *See, Yang v. Government Employees Insurance Company,* 146 F.3d 1320, 1322 (11th Cir.1998).

#### 1. *Mr. Purvis' Defenses*

Mr. Purvis counters that his use of the credit report was justified. He proposes three bases for justification, each of which, he claims, entitles him to judgment as a matter of law: (1) he both obtained and used the credit report for a proper use; (2) Mr. Chester released Mr. Purvis from subsequent liability in a signed release agreement or waived his right to object to the use of the credit report when his lawyer said "go for it;" and (3) he has absolute immunity from suit for having used the report in the course of a litigation; We turn to these justifications in turn.

#### 2. *Proper Purpose and Use*

■ It is undisputed on the record that Mr. Purvis received Mr. Chester's con-

sumer credit report from Ms. Pollard. See Pollard Aff., ¶¶ 9–12. Ms. Pollard, a vice president of Priority, testified that she obtained the report "for the purpose of assisting PFS [Priority] in accordance with the provisions to 15 U.S.C. § 1681e(a)." Pollard Aff. ¶ 6. No one questions that Ms. Pollard lawfully obtained the credit report. But Ms. Pollard's receipt of the report does not, somehow, automatically extend to Mr. Purvis. Mr. Purvis did not obtain the report, pursuant to the statute, from any "consumer reporting agency"; he obtained it from Ms. Pollard. Agency principles do not trump the statutory restrictions. Nor did he obtain it for any purpose enumerated in 15 U.S.C. § 1681b(a).

■ Mr. Purvis testifies that he used the credit report for a variety of litigation-related purposes: to refresh Mr. Chester's recollection; to test his effectiveness as a class representative; to test his adequacy as a class representative; to test him as a witness; and to ascertain his ability to pay costs. Purvis Dep., p. 68. None of these purposes is enumerated in the statute, nor can we fairly infer that an appropriate purpose—one related to the collection of a debt from Mr. Chester or to Mr. Chester's credit-worthiness—is implicit. The underlying action is not one in which Priority is suing Chester (or Hill et al) for collection of debts. It is Hill and a putative class suing Priority for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. Complaint, ¶ 10. *See, Yang v. Government Employees Insurance Company,* 146 F.3d 1320 (11th Cir. 1998).

Accordingly, we find that neither Mr. Purvis' obtaining of the credit report nor his use of it was for a proper purpose.

#### 3. *Release and/or Waiver*

Mr. Purvis argues that a release agreement entered into by Mr. Chester and Mr.

Brian Jennings in the matter captioned *Chester v. Priority Financial Services, Inc. and Brian Jennings,* IP98–1319–C B/S (S.D.Ind.1998) serves as a release of Mr. Chester's claims as to *him,* including a release of this action under the FCRA.

 It is well settled under Indiana law that a release agreement is to be interpreted in the same manner as any other contract. *Huffman v. Monroe County Community School Corp.,* 588 N.E.2d 1264,1267 (Ind.1992). One facet of this doctrine is that "contract rights exist only against the parties to the agreement, not against the world at large." *Green v. Hendrickson Publishers, Inc.,* 770 N.E.2d 784, 787 (Ind.2002), *quoting, ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1454 (7th Cir.1996). In other words, a release agreement, "like any other contract, only binds parties to the agreement or those in privity with a party." *ISP.com LLC v. Theising,* 783 N.E.2d 1228, 1232 (Ind.Ct. App., 2003). Privity may be found only if a non-party to the agreement holds "a mutual or successive relationship with [a party] with regard to property or that their interests are so identical as to represent the same legal right." *Id.*

 Both parties argue that the release agreement is unambiguous on its face as to whom it applies. We agree. The agreement provides: "This Release of All Claims and Settlement Agreement ("Agreement") executed this 16th day of November 1999, is between Leonard Ches-ter and Brian Jennings, his partners, associates, employees, owners, affiliates and related entities, successors and assigns." Ex. attached to Aff. of Todd J. Kaiser.[2] It follows that unless Mr. Purvis is Mr. Jennings or one of Mr. Jennings' partners, associates, employees, owners, affiliates, related entities, successors or assigns, then the agreement does not apply to Mr. Purvis.

Mr. Purvis makes a half-hearted effort to raise an inference that he is an "affiliate" or a "successor" to Mr. Jennings. Purvis Dep., 101–105. This effort is unconvincing. Although neither party has raised the issue, Mr. Jennings was a named defendant in the 1998 case and was clearly released as a defendant in that action. Mr. Purvis was counsel representing Priority in the 1998 action and Mr. Kaiser represented defendant Jennings. Mr. Purvis clearly was not Mr. Jennings' "affiliate" or "successor" in the sense that he was never a defendant in the underlying action. Additionally, the language of the release does not release Mr. Jennings' "agents" or "attorneys" or "representatives," which is common fare in such releases when the parties wish to release those individuals. We conclude that the release agreement does not extend to Mr. Purvis.

 As to waiver, Mr. Purvis mentions, without pursuing, Mr. Shepard's comment to him during Mr. Chester's deposition to "have at it." Mr. Purvis inter-

---

**2.** Mr. Kaiser represented Mr. Jennings in the 1998 lawsuit. Mr. Chester asks us to strike Mr. Kaiser's affidavit because it amounts to witness testimony and thus violates Rule of Professional Conduct 3.7. We think it clear that the purpose of Mr. Kaiser's affidavit is solely to authenticate the release agreement. Accordingly, we find no reason to strike Mr. Kaiser's affidavit. Additionally, Mr. Chester asks us to disqualify Mr. Kaiser and/or his firm in his representation of Mr. Purvis in this matter because Mr. Kaiser will necessarily appear as a fact witness for Mr. Purvis in the event we find the release agreement to be ambiguous, and because Mr. Kaiser may be caught in a conflict of interest between his representation of Mr. Purvis here and his former client, Mr. Jennings, in the prior lawsuit. Since we find no ambiguity concerning the parties to the release agreement and since we find no conflict of interest, we deny Mr. Chester's motion to disqualify Mr. Kaiser or his firm.

prets Mr. Shepard's comment to constitute a waiver of any objection to his use of the consumer credit report. See Chester Dep., p. 65. We cannot agree. It is quite clear from the context that Mr. Shepard is not consenting to Mr. Purvis' use of Mr. Chester's consumer credit report. As soon as Mr. Purvis stated that Mr. Shepard appeared to be invading a privileged area and that Mr. Purvis was merely asking Mr. Chester about his "awareness" of certain events, Mr. Shepard said: "Have at it, Greg." *Id.* We are hard pressed to interpret the words as waiving any subsequent objection to Mr. Purvis' use of the credit report.

### 4. *Absolute Immunity*

▮▮▮▮ Mr. Purvis argues that he has absolute immunity from suit under the statute because he obtained and used the credit report in the course of his duties as a lawyer in the context of a litigation. We find no basis in the case law for such immunity, particularly where, as here, the use violates a federal statute. There is broad consensus among the federal courts that *prosecuting* attorneys have absolute immunity when acting within the scope of their duties in initiating and pursuing a criminal prosecution and in presenting the government's case. As a rule, these cases arise pursuant to 42 U.S.C. § 1983 and involve an allegation of some kind of prosecutorial misconduct in the course of prosecuting a criminal case. *Imbler v. Pacht-*

*man,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Tobin for Governor v. Illinois State Bd. of Elections,* 268 F.3d 517 (7th Cir.2001); *Radcliffe v. Rainbow Const. Co.,* 254 F.3d 772, 777 (9th Cir. 2001); *Parkinson v. Cozzolino,* 238 F.3d 145, 150 (2nd Cir.2001). The same general principle of granting immunity to government lawyers acting within the scope of their official duties prevails in Indiana. *American Dry Cleaning & Laundry v. State,* 725 N.E.2d 96, 98 (Ind.Ct.App.2000); *Sims v. Barnes,* 689 N.E.2d 734, 736 (Ind. Ct.App.1997); *State, Dept. of Natural Resources v. Taylor,* 419 N.E.2d 819, 822 (Ind.Ct.App.1981). But none of the cases that Mr. Purvis cites,[3] and no case that we have been able to uncover in our own research, grants absolute immunity to an attorney in a civil matter whose tactics include violating a federal statute. The lead case in our circuit also rejects argument for absolute immunity even for government lawyers who are acting in an investigatory or administrative capacity, as opposed to a judicial proceeding. *Auriemma v. Montgomery,* 860 F.2d 273, (7th Cir.1988).

Mr. Purvis' invocation of absolute immunity is also counterintuitive. We have difficulty believing, for example, that a lawyer may engage in criminal activity and use the fruits of that criminal activity against his opponent in a civil litigation without being held answerable for the

**3.** Although we question whether Indiana law applies at all, it would not help Mr. Purvis even if it did. *Loomis v. Ameritech Corp.,* 764 N.E.2d 658, 665 (Ind.Ct.App.2002) holds that the immunity discussed in *Hamed v. Pfeifer,* 647 N.E.2d 669, 670 (Ind.Ct.App.1995) is not absolute. In *Hamed* a lawyer who allegedly used illegally obtained information for purposes of trial was granted immunity from suit largely because he did not know that the information had been illegally obtained. The *Loomis* court held that: "We decline to interpret *Hamed* as providing opposing attorneys

with absolute immunity for everything they may do during the course of a litigation as long as it can be considered to be a litigation-related duty. There may be some instances where suits should be allowed, as attorneys are not immune from liability from suits brought by opposing parties when their actions relating to obtaining and presenting evidence amounting to fraud, collusion, or malicious *or tortious conduct towards the opposing party."* *Loomis v. Ameritech Corp.,* 764 N.E.2d 658, 665 (Ind.Ct.App.2002) (Emphasis added).

criminal activity. *See Hamed v. Pfeifer,* 647 N.E.2d 669 (Ind.Ct.App.1995) *and* n. 3 *supra.*

We are sympathetic to the argument (not advanced here) that the law respects a lawyer's ability to expose opposing parties' and witness' inconsistencies and falsehoods during depositions as well as at trial. But the statute already appears to provide a lawful means for Mr. Purvis to have obtained—or at least attempted to obtain—and used Mr. Chester's consumer credit report. Among the permitted uses of a consumer credit report in § 1681b-(a)(1) is: "In response to the order of a court having jurisdiction to issue such an order...." This provision does not appear to have been addressed in the case law in a civil action.[4] On its face, however, the statute arguably would permit a lawyer to obtain and use a credit report on issuance of a subpoena during the ordinary course of discovery. Absent a record to support the argument, we offer no opinion as to whether obtaining a credit report would be permitted in the course of discovery or, if so, what the limitations on its use might be. We merely note that Mr. Purvis had an apparent statutory means of obtaining and using the report lawfully and did not seek to exercise that means.

## IV. Conclusion

For the reasons discussed, we *DENY* Mr. Purvis' motion for summary judgment. We *DENY* Mr. Chester's motions to strike Mr. Kaiser's affidavit and to disqualify either him or his firm from representing Priority. We also announce our intention to enter summary judgment in favor of Mr. Chester, though, out of an abundance of caution (not to say charity), we shall delay taking this action at this time. A close reading of Mr. Chester's opposition brief indicates that Mr. Chester intended his opposition to be considered a cross motion for summary judgment,[5] but he filed no cross motion *per se,* and he surely could have indicated his intent more forcefully so as to provide Mr. Purvis clear notice. Accordingly, we *ORDER* Mr. Purvis to respond, if he chooses to, to Mr. Chester's motion for summary judgment within thirty days after the date of this entry, following which Mr. Chester is allowed fifteen days to reply to Mr. Purvis' opposition, if any. Since we have paid careful attention to the parties' arguments to this point, we encourage both counsel not to repeat them unnecessarily in any subsequent briefing.

**4.** For a gloss on the provision in the civil context, *see, Braxton v. Farmer's Ins. Group,* 209 F.R.D. 651 (N.D.Ala., 2002); *Hall v. Harleysville Ins. Co.,* 164 F.R.D. 172 (E.D.Pa.,1995). The issue has been addressed in the context of a grand jury action. *Matter of Grand Jury Empanelled,* 638 F.2d 1235 (3d Cir.1981).

**5.** Mr. Chester writes in his opposition brief: "There is no genuine issue of material fact as to whether Mr. Purvis used Mr. Chester's credit report in a manner in violation of 15 U.S.C. § 1681b. Moreover, no genuine issue of material fact exists as to whether the Settlement Agreement only pertains to Mr. Brian Jennings, a defendant in *Hill v. Priority Financial Services, Inc.* ..." He also writes: "These issues, as a matter of law, preclude judgment in favor of Mr. Purvis, and show that Mr. Chester should be granted summary judgment as to Mr. Purvis' liability which the Court may do, *sua sponte,* even though Mr. Chester has not filed a Cross–Motion for Summary Judgment." Opp. Brief, pp. 1–2.